### MALLACH v. RIDLEY et al.

(*Supreme Court, General Term, First Department.* March 2, 1888.)

1. MASTER AND SERVANT—TORTS OF SERVANT—SCOPE OF EMPLOYMENT.
   In an action for false arrest by defendants' floor-walker on a charge of shop-lifting defendants' store superintendent testified that it was the floor-walker's duty to report to him when a person was detected in shop-lifting, and that "we [himself and subordinates] never apprehend a person on suspicion." There was also evidence that it was the floor-walker's duty to look after thieves, and to arrest persons caught in the act of stealing. *Held*, that the evidence warranted a finding that it was within the scope of the floor-walker's employment to arrest persons for shop-lifting.

2. SAME—STORE-KEEPERS—DUTY TO CUSTOMERS.
   A store-keeper is liable for mistreatment of a customer by an employe, though the employe was not acting within the scope of his employment.

Appeal from circuit court, New York county.

. Action by Ann Mallach against Edward A. Ridley and others for false imprisonment. After plaintiff had left defendants' store, where she had purchased some articles, a policeman requested her to return to the store, which she did. The policeman was sent after plaintiff by defendants' floor-walker, who accused her of shop-lifting. Defendants had nothing to do with the transaction personally, and they contended that they were not liable, inasmuch as the floor-walker was not authorized to have a person arrested on suspicion, as was done in this case. There was a verdict for plaintiff for $250, and from the judgment entered thereon defendants appeal. For former reports, see 36 Hun, 643, *mem.;* Id. 645, *mem.;* 43 Hun, 336; Id. 640, *mem.*

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Edward P. Wilder,* for appellants.    *Kurzman & Yeaman,* (*Ferdinand Kurzman,* of counsel,) for respondent.

VAN BRUNT, P. J. The evidence in this case does not seem to materially differ from that which was presented by the record upon the last trial of this case, upon the appeal from the judgment, in which this court held that there was sufficient evidence upon which the jury could find that the floor-walker, in the arrest and searching of the plaintiff, acted within the scope of his authority; and it would not be necessary upon this appeal to do more than to refer to the opinion previously announced, in order to sustain the judgment, were it not for the apparent failure to comprehend the evidence, which seems to be indulged in by the counsel for appellant. In discussing the previous opinion of the general term, it is insisted that it does not apply, because the record on the present appeal discloses absolutely nothing in the nature of instructions that could possibly justify any employe of the defendants in dragging into their store a woman who had been arrested a block away, and forcibly taking her to a private room, and subjecting her to a search. We have searched the record in vain to find any evidence which in the slightest degree justifies the foregoing statement. The whole argument is based upon the assumption that the plaintiff was arrested by the policeman in the street, and dragged into defendants' store, and that such arrest was in no way requested by defendants' agents. The evidence in the case, however, discloses that the plaintiff was not arrested in the street, and that no force whatever was applied to her, either in respect to her movements or in respect to her person, except while she was in or on defendants' premises. It is true that

the policeman accosted her in the street, but he simply asked her to go back to the store. She did not refuse, and went voluntarily, and had no idea whatever that she was the subject of restraint, or that she was in the custody of an officer of the law. Upon her arrival at the store, the plaintiff went with the policeman and the floor-walker over to the saleswoman by the name of Clark, who was asked: "Is this the woman who stole the corset?" The answer was: "I didn't see that woman steal a corset; I thought she was looking at bracelets." The man, who subsequently turned out to be a policeman, looked at the woman, and then at the floor-walker, Mr. Graff, and Graff said: "Take her up stairs; fetch her along;" and she was taken up stairs, and searched by these two men, who, after finding nothing upon her, permitted her to go. The evidence in this case shows that Graff's duties were those of a floor-walker; that he was to look after the employes, and to look after thieves; that the defendants exhibited their goods in such a way as to attract shoplifters; and that it was the duty of this floor-walker to arrest persons caught in shop-lifting. It is true that Mr. Moore, the superintendent, swears that his duty was, when a person was caught shop-lifting, to report to him, which is absurd upon its face, as while a report was made to him the shop-lifter would have ample time to escape. But he also swears: "We never apprehend a person on suspicion." And, when asked who he meant by "we," he said himself and his subordinates; from which the jury had a clear right to infer that, notwithstanding Mr. Moore's testimony on the subject of instructions, it was the understanding that persons were to be arrested by floor-walkers who were caught in the act of shop-lifting. It is clear that they had the right to arrest, and if they arrested upon insufficient evidence, or made a mistake in their conclusions from what they saw or heard, the defendants cannot escape responsibility. The floor-walker evidently had the right to arrest and apprehend thieves, and under that authority if he apprehended an innocent person, his employers are necessarily responsible. They cannot confer such an authority upon the employe, and claim the benefits of his action when he acts advisedly, and absolve themselves from all risks when he acts on insufficient evidence. It seems from the facts, to which attention has already been called, that the jury had ample justification in concluding that, although there was an attempt to disguise the authority of these floor-walkers in reference to the powers which they had for apprehending those caught in the commission of crime, it was a mere subterfuge, and that the understanding of the defendants was that their employes should exercise this extreme power; and in those cases where they were justified in so doing the authority was to be deemed conferred, but in those cases in which they acted hastily the sole authority was vested in the general superintendent, and therefore they were not responsible for the ill-advised action of the floor-walker.

There is another view to be taken of this case, which seems to be in consonance with the present line of decisions in regard to the principal being liable for the acts of his subordinates. It was long held by the court that a common carrier was not responsible for a willful assault by one of its employes upon a passenger. This rule, however, has been abrogated upon the theory that the common carrier invites the passenger to subject himself to the protection and care of the employe of the corporation, and under these circumstances the common carriers should be responsible for all the acts of the subordinates towards the passenger while under his custody and control. In like manner, the store-keeper invites the public to enter the premises, and to subject themselves to the custody and control of his subordinates, and by parity of reasoning he should be held responsible for the brutalities of such subordinates, even where they are not committed within the strict line of his employment. There seems to be no distinction in principle between the cases. The judgment should be affirmed, with costs. All concur.