VICTOR KWIECHEN v. HOLMES & HALLOWELL COMPANY and Another.[1]

November 27, 1908.

Nos. 15,747—(66).[2]

**Master's Liability for Servant's Torts.**

A master is responsible for the torts of his servant done in the course of his employment with a view to the furtherance of his master's business, and not for a purpose personal to himself, whether the same be done wilfully, but within the scope of his agency, or in excess of his

[1] Reported in 118 N. W. 668.          [2] April, 1908, term calendar.

authority, or contrary to the express instructions of his master. Barrett v. Minneapolis, St. P. & S. Ste. M. Ry. Co., supra, page 51, 117 N. W. 1047.

### Same—Servant's Private Business.

S. was employed by a coal company to deliver coal at a stipulated price per ton. He furnished his own horses, harness, and sleds, and the company furnished the sled boxes, shovels, and chutes. S. owned another horse which he was hiring to another party, who also was delivering coal for the company. This horse was returned to S. at the coal company's yard, and he, for the purpose of taking it to his home, carelessly tied it by means of a long rope to the end of one of the sleds with which he was delivering coal for the company. While passing along the street, the led horse became excited, and ran upon the sidewalk, and kicked a person who was standing there. *Held*:

That S. was liable for the damages, but as the horse was not being used in the company's business, or in attempted furtherance thereof, but in the private business of S., the company was not liable.

### Same—Retention in Employ after Tort.

The retention of a servant, with the knowledge that the servant has done some negligent act for which the master was not liable, will not in itself render the master liable.

Action in the district court for Hennepin county to recover $12,600 damages for personal injuries sustained by plaintiff's infant daughter through the alleged negligence of defendant's servant. The case was tried before Frederick V. Brown, J., and a jury which rendered a verdict in favor of plaintiff for $100. Plaintiff's motion for a new trial was denied as to the defendant company but granted as to defendant Spears, unless he would consent that the verdict be increased to $350. Defendant company's motion for judgment notwithstanding the verdict was granted. From the judgment entered pursuant to the order, plaintiff appealed. Affirmed.

*H. E. Fryberger,* for appellant.

*Cohen, Atwater & Shaw,* for respondent.

ELLIOTT, J.

There is little serious controversy as to the facts. The action was brought by the appellant as the father of his minor child, Estella Kwiechen, against the Holmes & Hallowell Company, a corporation, and Samuel V. Spears, to recover damages for personal injuries. The jury returned a verdict against the defendant for $100. The plain-

tiff made a motion on various grounds to set aside the verdict as to both defendants, and for a new trial. The motion was denied as to the Holmes & Hallowell Company, and granted as to Spears, unless he consented that the verdict against him should be increased to $350. This he did, and the motion was therefore denied. Thereafter, on motion of the Holmes & Hallowell Company, the court ordered judgment in its favor notwithstanding the verdict. From the judgment entered on this order, the plaintiff appealed to this court.

The assignments of error are very numerous, but many of them need not be considered in view of the fact that we are satisfied that no cause of action was proven against the Holmes & Hallowell Company.

At the time of the accident, the Holmes & Hallowell Company was engaged in the fuel business in the city of Minneapolis. The defendant Spears was employed by it to deliver coal to the company's customers in the city. In making such deliveries, he used two teams, and was paid a stipulated sum per ton for coal delivered by his teams. The horses, harness, and bob sleds used in the work were owned and furnished by Spears, while the employer furnished the sled boxes, shovels, and chutes. Each team used by Spears consisted of two horses, with the accompanying outfit. Spears employed and paid a man named Davis to drive one of the teams. Davis worked for Spears, and not for the company. The teamsters did not collect for the coal delivered. Spears also owned a fifth horse, which he had for some time been renting to another employee of the company, named Osterman, and this party had been using it in delivering coal under an agreement similar to that existing between Spears and the company. For about four weeks prior to the accident Spears had not used this horse himself. On the morning of February 6, 1907, Osterman brought the horse to the company's yard for the purpose of returning it to Spears, and left it in one of the sheds, where it remained until near three o'clock in the afternoon. One of Spears' teams, with a load of coal ready for delivery, was standing in front of the coal yard office, waiting until the proper ticket was made out for the driver.

About four o'clock, Spears, being ready to start, took the extra horse and tied it to an iron brace on the rear of the sleigh with a rope which was fastened to the horse's halter. There was conflicting evidence as to the length of this rope, but it was evidently long enough

to permit the horse to have entirely too much freedom. It may be conceded that the horse was thus hitched in a careless and negligent manner, and as a result he was able to swing about and injure a person on the sidewalk. Hanson, the superintendent and general foreman for the company, was in the office when Spears started with the led horse, and saw what occurred. While the team in this condition was passing along the streets of the city, something disturbed the led horse, and caused him to swing toward the sidewalk and kick a little girl who was standing there. Spears' liability for the damage thus resulting stands conceded, and the question is as to the liability of his employer for his negligent act.

Upon these facts the Holmes & Hallowell Company was not liable for the damage which resulted from the negligence of Spears. Whatever principles and reasons may have controlled the decisions of other courts, the rule of liability of a master for the torts of his servant is now so thoroughly settled in this state as to render elaborate discussion no longer necessary. It is possible that there has at times been some confused thinking, and it may be that no single principle has uniformly been stated as the controlling reason for every decision. However this may be, there is no ambiguity in the rule framed and stated by the Chief Justice in the recent case of Barrett v. Minneapolis, St. P. & S. Ste. M. Ry. Co., supra, page 51, 117 N. W. 1047. The rule is that a master is responsible for the torts of his servant done in the course of his employment, with a view to the furtherance of his master's business, and not for a purpose personal to himself, whether the same be done wilfully, but within the scope of his agency, or in exercise of his authority, or contrary to the express instructions of his master. Smith v. Munch, 65 Minn. 256, 68 N. W. 19; Larson v. Fidelity Mut. Life Assn., 71 Minn. 101, 73 N. W. 711; Lesch v. Great Northern Ry. Co., 93 Minn. 435, 101 N. W. 965; Crandall v. Boutell, 95 Minn. 114, 103 N. W. 890; Merrill v. Coates, 101 Minn. 43, 111 N. W. 836; Anderson v. International Harvester Co., 104 Minn. 49, 116 N. W. 101.

Applying the rule to the facts of the case at bar, we have but little difficulty in reaching the conclusion that the trial court properly ordered judgment to be entered in favor of the defendant company. Spears was employed by the company to deliver coal, and it was liable for his

torts committed in the course of his employment with a view to the furtherance of his employer's business. But it was not liable for his torts when done for a purpose personal to himself. Spears was delivering coal for the company, but the leading of the extra horse had no connection with the performance of the duty which he owed to his employer. It was not connected in any manner with the duty of delivering the coal. The horse belonged to Spears. The company had no control over it. It had been rented, not by the company, but by Osterman. It had been used by Osterman, and not by the company. Osterman had returned it, not to the company, but to Spears. It was in the latter's possession, and under his control, and in leading it home he was serving his own purpose solely.

It is true it was attached to the team which he was using in the company's business, but not in any auxiliary capacity. If the load had proven too heavy for the team to draw, and Spears had attempted in some way to use his extra horse to assist in drawing the load, we would have had a case of acting for the furtherance of the master's business. But nothing of the kind was done. Leading the horse was an act entirely disconnected with the work Spears was doing for the company, not done or assumed to have been done with a view to aid or further that business. Spears was handling his own property, for his own purpose, in his own way, and was alone responsible for the results of the negligent manner in which he acted. This being true, the fact that Hanson stood by and did not interfere with Spears' way of tying the horse is immaterial. The extra horse did not render the vehicle which was being used in the company's business unsafe and dangerous, and with Spears' own personal business Hanson had no concern. He was, therefore, under no obligation to superintend the hitching of the horse.

But it is urged that the company became liable for the negligence of Spears because it retained him in its employ after it had knowledge of this accident. The authorities do not sustain this contention. When there is no original liability for the act of a servant, because at the time of the negligence the servant was acting in his own personal business, the master does not become liable merely by reason of the fact that he thereafter retains the servant in his employ. The rule contended for by appellant would seem to render an employer liable

for every act of negligence of which he had knowledge which had been committed by the employee prior to the time when he employed him. The fact that an employee is retained after knowledge of a negligent act for which the master is already liable is sometimes important as bearing upon the right to recover exemplary damages, and this is evidently all the Wisconsin court intended to hold in Cobb v. Simon, 119 Wis. 597, 97 N. W. 276, 100 Am. St. 909. This appears with reasonable clearness from the final disposition of the case on a subsequent appeal (124 Wis. 467, 102 N. W. 891), and from the cases cited (Bass v. Chicago, 42 Wis. 654, 24 Am. 437; Robinson v. Superior, 94 Wis. 345, 68 N. W. 961, 34 L. R. A. 205, 59 Am. St. 897).

Ratification may supply the want of original authority to act as the servant of another. Thus ratification of acts which another has without authority performed as his servant and for his benefit will render him liable for the latter's negligent acts which were so connected with the employment that he would have been liable for them as master if the latter had been his servant when committing them. A., while delivering coal which had been ordered by B. from C., carelessly broke B.'s window, and it was found that A. was not C.'s agent when he broke the window, but, as the delivery of the coal by him was ratified by C., it was held that such ratification made A. the agent and servant of C. during the delivery of the coal, and that C. was therefore responsible for his negligence. Dempsey v. Chambers, 154 Mass. 330, 28 N. E. 279, 13 L. R. A. 219, 26 Am. St. 249. So in Nims v. Mount Hermon, 160 Mass. 177, 35 N. E. 776, 22 L. R. A. 364, 39 Am. St. 467, it was held that an educational institution that ratified the actions of persons who had assumed to operate a ferry for it thereby became liable for personal injuries to a passenger caused by the negligence of the ferryman. Ratification may thus supply the want of authority in a person who at the time of the negligent act was assuming to represent a master, but the principle cannot apply to a case such as the one at bar. Spears was not assuming to act as the servant of the company when he adopted this method of taking care of his own horse. Merely retaining Spears in its employ could not in itself create liability for acts which had been done by him while engaged in his own personal business, and when not assuming to represent the company.

It is also contended that the court erred in refusing to instruct the jury, as requested, that the plaintiff might recover against the company, if Spears, having a horse tied, as this one was, to the rear of the sleigh, drove the team too close to the curb, and by reason thereof the plaintiff was injured. This sounds plausible, but is essentially unsound. The team that was being used in the master's business was properly driven, and the burden of liability cannot be shifted to the master because the servant, for some purpose of his own, renders the outfit unsafe under certain circumstances. The negligent manner in which Spears tied the horse to the company's sleigh, and not the driving of the team, was the proximate cause of the injury. The instruction was properly refused.

The assignments directed to the rulings and instructions as to the right of the defendant's attorney to comment on the failure of the plaintiff's physician to testify that Spears had admitted that he was intoxicated, that an employer's liability company was the real defendant, the excluding of the insurance policy with statements therein tending to show that Spears was in the employ of the company, and the reception of certain evidence tending to show the relation of the parties do not require consideration, as they relate to Spears' personal negligence, the extent of the injury, and other matters affecting only the amount of the recovery. They are no longer of importance after it has been decided that no liability whatever existed on the part of the company. The ultimate result, so far as liability is concerned would have been the same had every such ruling been the other way.

Judgment affirmed.

JAGGARD, J. (dissenting).

I am unable to agree with the majority of the court, first, as to the correctness of the rule of law announced in the opinion; and, second, as to the applicability of that rule to the facts in this particular case.

1. The authorities cited sustain the rule that the master is responsible for the torts of his servant in the course of the employment, with a view to the furtherance of the master's business, and not for a purpose personal to himself. But the proposition that the master is not liable for the torts of his servant in the course of his employment, not done with a view to the furtherance of the master's business, but for

a purpose personal to himself, does not follow from this any more than it does from the rule in Shelley's case. "Bad law may be easily made by taking the converse of a legal proposition for law." Per Mr. Justice Gaynor in Novogrucky v. Brooklyn Heights, 125 App. Div. 715, 110 N. Y. Supp. 29. The authorities are wholly irrelevant, save only one, Larson v. Fidelity Mut. Life Assn., 71 Minn. 101, 73 N. W. 711. That case involved. a malicious prosecution, which proceeded upon the assumption that the servant had instituted criminal proceedings to subserve a purpose personal to himself. It was therefore held that the master was not liable for this independent tort. It will subsequently be pointed out that this view of the law is not at all inconsistent with submitting the question of liability of the master in this case to the jury. The authorities cited with reference to ratification are not in point, and are, in my opinion, wholly alien to the controversy at bar.

These artificial restrictions upon the master's liability which the majority opinion imposes, therefore, stand unsupported by the authorities cited. There are authorities which are not cited which do tend to support them, but they are opposed to the overwhelming weight of authority in general and in this state in particular. The subject is a wide one. Its proper consideration involves a review and discussion of such extent as to preclude adequate presentation within the narrow limits appropriate to a dissenting opinion. All that is feasible, under the circumstances, is a partial summary, which is the result of an actual and immediate examination in detail of practically all the relevant authorities on both sides of the controversy.

All authorities agree upon the obvious proposition that the master is not liable for the independent torts of his servant. The difficulty arises in determining what is and what is not an independent tort. In cases where the wrong complained of has absolutely no connection with the master's premises, instrumentalities, or facilities for doing business, the motive of the servant is a proper, and often a determining, consideration. This is particularly conspicuous in cases of false imprisonment and of malicious prosecution, as in Larson v. Fidelity Mut. Life Assn., supra. Even in these cases there is a manifest tendency to submit the question of the master's liability to the jury. 19 Cyc. 328, 26 Cyc. 19. In these cases no special duty is imposed upon

the master to the person injured, for the violation of which by his servant he could properly be held responsible, by virtue of the relationship alone. If, of course, the master has in any way authorized or ratified the tort, his liability would arise, not from the fact of the relationship, but from consent, before or after the tort. Cases of this kind come fairly within the familiar principle that the master is liable for the tort of his servant acting within the scope of his authority, liberally defined.

A larger liability has been recognized in all parts of this country in an increasingly large group of cases in which it is necessary, first, that the relationship of master and servant be established; and, second, that the servant's act in the course of his employment violated a duty owed by the master to the person injured. This class of cases covers an extremely wide range. It includes (1) cases in which a relation. has been assumed by contract to which the common law has attached certain duties, as cases of common carriers, innkeepers, bailees for hire, proprietors of places of amusement who have charged admission, and others; (2) cases in which no duty was involved in connection with a contract, as in the group of cases in which a master has been held liable for the acts of his servants, done with a purpose personal to the servant, and whereby a customer, actual or prospective, has been injured; (3) cases in which the master has by means of an instrumentality not dangerous put the servant in a position to do harm; (4) cases in which a master has intrusted to his servant the custody of an instrumentality capable of doing harm, as an engine, or a horse and wagon, or the like; and (5) many other instances.

The conclusion reached by these very many cases has been stated thus: "If the wrongful act done by the servant is done in his representative capacity, and accords with the general scheme of his employment, the master should be held responsible for the injury done, whether the wrong was committed for the benefit of the master or for the servant's own personal advantage." Wm. R. Vance, in 4 Michigan Law Rev. 210. In his note to Mallach v. Ridley, 24 Abb. N. C. 172, 9 N. Y. Supp. 922, Mr. Abbott says: "A few years ago it was almost universally held in this country that an act of the employee the motive of which appeared to be his own malice, did not render the employer liable even though done within the scope of the employment;

but all the authorities which sanction that rule are now deemed in so far overruled; and in respect to the question of the right of action, the motive of the servant is now immaterial, and even the fact that the employer gave proper instruction and that the act was in direct violation of those instructions does not shelter the employees."

In Stranahan v. Coit, 55 Oh. St. 398, 45 N. E. 634, 4 L. R. A. (N. S.) 506, where the master was held liable for the malicious act of the servant, with intent to injure the master, in adulterating cream contrary to law, the rule was laid down that "where a master owes to a third person the performance of some duty, as to do or not to do a particular act, and commits the performance of the duty to a servant, the master cannot escape responsibility if the servant fails to perform it, whether such failure be accidental or wilful, or whether it be the result of negligence or malice. Nor is the case altered if it appear that the malice was directed to the master." These statements may not be accurate in toto. None the less they summarize the certain trend of decisions in this country on this point. It is true that in England the motive of the servant and the furtherance of the master's business are in general the determining factors, and that the earlier Massachusetts cases taken as a whole, are in substantial, but not entire, accord. The tendency of the later Massachusetts cases is to bring the law of that state into harmony with the general American rule. None of the cases which are apparently opposed, however, involved facts not distinguishable from those at bar. Indeed, as will presently be pointed out, under the English theory, the question of this case would, I think, have been for the jury.

The rule of law as it was established by this court before the decision of this case is the one generally in force in this country, and is well illustrated in McCord v. Western Union Tel. Co., 39 Minn. 181, 39 N. W. 315, 1 L. R. A. 143, 12 Am. St. 636. In that case defendant's local agent, who was also the agent of an express company, sent a forged dispatch to plaintiff, a merchant in a neighboring city, requesting plaintiff to forward money to plaintiff's agent at defendant's agent's station. The money, in good faith forwarded by plaintiff, was intercepted by defendant's agent and converted to his own use. Vanderburgh, J., (page 183), said:

"The principal contention of defendant is, however, that the corporation is not liable for the fraudulent and tortious act of the agent

in sending the message, and that the maxim respondeat superior does not apply in such a case, because the agent in sending the dispatch was not acting for his master, but for himself, and about his own business, and was in fact the sender, and to be treated as having transcended his authority, and as acting outside of and not in the course of his employment, nor in furtherance of his master's business. But the rule which fastens a liability upon the master to third persons for the wrongful and unauthorized acts of his servant is not confined solely to that class of cases where the acts complained of are done in the course of the employment in furtherance of the master's business or interest, though there are many cases which fall within that rule. * * * Where the business with which the agent is intrusted involves a duty owed by the master to the public or third persons, if the agent, while so employed, by his own wrongful act occasions a violation of that duty, or an injury to the person interested in its faithful performance by or on behalf of the master, the master is liable for the breach of it, whether it be founded in contract or be a common-law duty growing out of the relations of the parties. 1 Shear. & R. Neg. (4th Ed.) §§ 149, 150, 154; Tayl. Corp. (2d Ed.) § 145. And it is immaterial in such case that the wrongful act of the servant is in itself wilful, malicious or fraudulent."

2. At most, however, this was a case in which two motives were present, viz., the one to deliver coal for the master in pursuance of his business, and the other to take home the servant's horse for his own purpose. Under the rule announced, and under conception of the facts adopted by the majority, the master would have been liable so far as the first of these was concerned and would not have been liable under the second. This aspect has not been considered. The great weight of authority is to the effect that where the servant, at the time of the commission of the tort, is engaged in executing his own private purpose, but at the same time is pursuing the master's business in the matter for which he was employed, the law will not undertake to fix with precision the line which separates the act of the servant from the act of the individual. South Covington v. Cleveland, 100 S. W. 283, 286, 30 Ky. L. R. 1072, 11 L. R. A. (N. S.) 853; Barmore v. Vicksburg, 85 Miss. 426, 443, 38 South. 210, 70 L. R. A. 627. Thus in Gracey v. Belfast [1901] 2 Ir. R. 322, 324, Palles, C. B., said: "There

is evidence that the servants while riding the horses upon the road to the forge, for their own amusement ran a race upon the horses towards the forge, and in so doing rode negligently, and thereby caused the damage. Are the masters liable? If we eliminate what has been called 'the purpose of running a race,' admittedly they would be liable. In such a case, the act of bringing the horses to the forge would undoubtedly have been one in the course of their employment. * * * But the ground of the masters' liability in such a case would not have been based on any such subtlety as that of a single purpose, as distinguished from several purposes, but because the servants would have been doing their masters' business: * * * The act would have been done for the master. What, then, is the effect of the servants being actuated by the second purpose; that of riding a race? This second purpose was consistent with the first. * * * The basis of the case, therefore, is that a servant acting for two purposes, one of which is his master's, and the other his own, renders the master responsible."

Here Spears was in the employ of the defendant company. He delivered coal for them. He was subject to the company's orders and in the company's pay. The master had the right and power to command and control him at the instant of his start and of the performance of the causal act. The very horse he was taking home was one used for the company's business. That title to the instrumentalities which he, or another servant, used on the company's behalf, was in himself, is not controlling, nor especially significant, so far as plaintiff is concerned. See Standard Oil Co. v. Parkinson, 152 Fed. 681, 82 C. C. A. 29; Patten v. Rea, 2 C. B. (N. S.) 606; Rahn v. Singer Mnfg. Co. (C. C.) 26 Fed. 912, affirmed 132 U. S. 518, 10 Sup. Ct. 175, 33 L. Ed. 440; Waters v. Pioneer Fuel Co., 52 Minn. 474, 55 N. W. 52, 38 Am. St. 564. As a matter of law he had not abandoned his master's business for his own, nor had he departed from it. It was at least a question of fact whether or not his purpose was in furtherance of his master's enterprise and whether or not he was engaged in doing what his contract of service reasonably required. Mulvehill v. Bates, 31 Minn. 364, 17 N. W. 959, 47 Am. 796; Phelon v. Stiles, 43 Conn. 426; East St. Louis v. Reames, 173 Ill. 582, 51 N. E. 68. This was not a case where the servant was going on a frolic or errand

of his own, without being at all on his master's business. Therefore the master was liable. Joel v. Morison, 6 Car. & P. 501; Ritchie v. Waller, 63 Conn. 155, 28 Atl. 29, 27 L. R. A. 161, and note, 38 Am. St. 361. Barmore v. Vicksburg, supra; Quinn v. Power, 87 N. Y. 535, 41 Am. 392.

Moreover, defendant's superintendent, Hanson, whose instructions Spears was bound to obey, says he knew that the horse was tied to the wagon, as has been stated. He made no objection nor suggestion, and gave no instruction. The permission resembled command. Standard Steel Car v. McGuire (C. C. A.) 161 Fed. 527. And see Fletcher v. Baltimore & P. R. Co., 168 U. S. 135, 18 Sup. Ct. 35, 42 L. Ed. 411. On this state of facts, in England, it would seem that the master would have been held responsible. In Patten v. Rea, 2 C. B. (N. S.) 606, it was held that, if a servant is upon his master's business when he injures a third person by driving against him, the master is liable, although the horses belonged to the servant and the servant was at the same time attending to business of his own (to visit a doctor). There, as in the case at bar, the "master knew that he was going, and in what manner he was going." This servant was not as a matter of law acting in a capacity different from that in which he was employed, and the servant was not, as a matter of law, so far an independent contractor as to exonerate the master.

The present situation is substantially the same as if a conductor of a street car, to the knowledge of the foreman of the company, should put a long pole through the right-hand window of his car to take home with him for piscatorial or other purposes. If that pole struck a person using the highway, the company would certainly be responsible, although the pole would be the conductor's private property and was being conveyed for his purely personal purpose. The question whether this master was therefore liable is not to be determined as a matter of law in the master's favor.