Henry D. Everingham, Appellant, v. Chicago, Burlington and Quincy Railroad Company, Appellee.

**Assault by one servant upon another:** LIABILITY OF MASTER: EVIDENCE. The master is not liable for the assault made by one servant upon another where the same was not done in the prosecution of the master's business, but in order to effect some purpose of the party making the assault. In the instant case the evidence is held insufficient to 'show that the assault was committed in the prosecution of the master's business.

**Same:** RATIFICATION OF SERVANT'S ACT. Mere retention in his employ by the master of a servant who has committed an assault upon a fellow servant as the result of his own malice does not amount to a ratification of his act and render the master liable therefor.

**Same:** EVIDENCE OF REPUTATION. Where a servant of his own volition and to gratify his personal malice makes an assault upon a fellow servant, evidence of his reputation for quarrelsomeness is immaterial, in an action against the master for the assault. And the evidence sought to be offered in this action was objectionable because not confined to the servant's reputation in the community in which he lived.

**Same:** CONDUCT OF SERVANT: LIABILITY OF MASTER. The master can only be held responsible for the fidelity and good conduct of a servant while acting within the scope of his employment; he can not be held to warrant the servant's conduct in matters outside of the employment.

*Appeal from Lee District Court.*—Hon. Henry Bank, Jr., Judge.

FRIDAY, OCTOBER 21, 1910.

ACTION to recover damages for an alleged assault made upon plaintiff by one of defendant's employees.  Trial to a jury, directed verdict for defendant, and plaintiff appeals. —*Affirmed.*

*J. C. Hamilton* and *R. N. Johnson,* for appellant.

*H. H. Trimble, Palmer Trimble,* and *George B. Stewart,* for appellee.

DEEMER, C. J.—Plaintiff is the owner of an elevator in the town of Ft. Madison.  A spur track from defendant's railroad leads to this elevator over defendant's own land. Cars for plaintiff's use were to be set out on this spur track, and, when loaded, shipped to the various consignees. He claims that he had very poor switching service, and that he complained thereof to defendant's general agent at Keokuk.  William Tordt was defendant's switchman at Ft. Madison, having control of the cars which should be switched for use at plaintiff's elevator.  Plaintiff claims that on August 15, 1908, he was delayed in getting cars ordered by him to the elevator, and that, by reason thereof, he had a number of men who were compelled to remain idle; that, while in this situation, Tordt came in with a switching crew upon the spur track to take out some empty cars, and it is shown that plaintiff while standing on the platform of his elevator or in a door leading into said elevator engaged in a wordy controversy with Tordt, who was then standing by some cars which were being moved by an engine attached thereto on this spur track. It seems that plaintiff had notified the Burlington office that he wanted some cars set on this spur track for his use, and that he also informed Tordt of his wishes in the matter.  When Tordt got near to plaintiff and while

standing on the ground near the cars, he said to plaintiff:
"Why in hell don't you leave a list of where you want
your cars switched at the office, you God damn farmer, you."
In response to this plaintiff said: " 'I would about as
soon be a God damn farmer as a damn fool switchman.'
Tordt immediately climbed upon the platform, and hit
me several times. He was standing a foot or two away
at the time he hit me. I think I had my hands in
my pockets. No further words passed between us. I can
hardly tell where he hit me they came so fast. I was
hit once in my right eye, once on the nose, and once on
the side of my mouth and probably several other times,
could not say exactly where. I did not strike at him.
I turned around to protect myself, and Tordt jumped on
my back, and continued to hit with one hand." Plaintiff
also testified as follows: "Tordt, when he first ad-
dressed me, was either reaching to bleed the air out of
the car, or else he had hold of the coupling irons. He
had hold of the lever with his left hand. It was not
the car next the engine. I don't know if he was at the
front or rear end of the car. He was switching these cars.
I was not anticipating trouble. Tordt was more than a
switchman. He was the foreman. He was the man who
gave orders. He had charge of the switching and had
charge of the bills."

I. This is plaintiff's case as reproduced from his
own testimony, and it is the strongest argument that could
be made in support of the proposition that he has no
cause of action against the defendant, al-

1. ASSAULT BY
ONE SERVANT
UPON AN-
OTHER: lia-
bility of mas-
ter: evidence.

though liability on the part of Tordt in-
dividually is clearly made out. It is funda-
mental that a master is not liable for all
assaults made by his servant. It is only
for such as are done in the prosecution of the master's
business that the master is liable. If the servant steps
aside from his master's business and in order to effect some

purpose of his own commits an assault, the master is not liable. This is clearly pointed out in the following cases already decided by this court: *Alsever v. Railroad,* 115 Iowa, 338; *Dougherly v. Railroad,* 137 Iowa, 257; *Kincade v. Railroad,* 107 Iowa, 682; *Dolan v. Hubinger,* 109 Iowa, 408; *Porter v. Railroad,* 41 Iowa, 358; *Golden v. Newbrand,* 52 Iowa, 59; *Marion v. Railroad,* 59 Iowa, 428. In the latter case it is said: "The rule is that an employer is not liable for a willful injury done by an employee , though done while in the course of his employment, unless the employee's purpose was to serve his employer by the willful act. Where the employee is not acting within the course of his employment, the employer is not liable, even for the employee's negligence, and the mere purpose of the employee to serve his employer has no tendency to bring the act within the course of his employment." One of the best statements of the rule is found in Cooley on Torts (2d Ed.), 628, which reads as follows: "So if the conductor of a train of cars leaves his train to beat a personal enemy, or from mere wantonness to inflict an injury, the difference between his case and that in which the passenger is removed from the cars is obvious. The one trespass is the individual trespass of the conductor, which he has stepped aside from his employment to commit. The other is a trespass committed in the course of the employment, in the execution of orders the master has given, and apparently has the sanction of the master, and contemplates the furtherance of his interests. . . . The test of the master's responsibility is not the motive of the servant, but whether that which he did was something his . employment contemplated and something which if he should do it lawfully he might do in the employer's name."

II. It is claimed that defendant ratified the assault by keeping Tordt in its employ, and not discharging him after the assault was made. That he was so kept is con-

ceded; but surely this can not be regarded as a ratifica-
tion of a prior act not done in defendant's
interest, for its benefit or by its authority
either express or implied. No case so holds,
and, if any such were to be found, we should not be
disposed to follow it. From *Kwiechen v. Holmes,* 106
Minn. 148 (118 N. W. 668, 19 L. R. A. (N. S.) 255),
we extract the following as announcing the true rule as
to ratification: "But it is urged that the company became
liable for the negligence of Spear because it retained him
in its employ after it had knowledge of this accident. The
authorities do not sustain this contention. When there
is no original liability for the act of a servant, because
at the time of the negligence the servant was acting in
his own personal business, the master does not become
liable merely by reason of the fact that he thereafter
retains the servant in his employ. The rule contended for
by appellant would seem to render an employer liable for
every act of negligence of which he had knowledge which
had been committed by the employee prior to the time when
he employed him. The fact that an employee is retained
after knowledge of a negligent act for which the master is
already liable is sometimes important as bearing upon the
right to recover exemplary damages, and this is evidently
all the Wisconsin court intended to hold in *Cobb v. Simon,*
119 Wis. 597 (97 N. W. 276, 100 Am. St. Rep. 909).
This appears with reasonable clearness from the final dis-
position of the case on a subsequent appeal (124 Wis.
467, 102 N. W. 891), and from the cases cited (*Bass
v. Railway Co.,* 42 Wis. 654, 24 Am. Rep. 437).

III.   Plaintiff offered to prove Tordt's reputation as
to being a quarrelsome man, but the offered testimony was
rejected. No charge of negligence in em-
ploying Tordt or in keeping him in defend-
ant's service was charged in the petition,
and no claim of liability on this ground is made. We

*2. SAME: ratifi-
cation of
servant's act.*

*3. SAME: evi-
dence of rep-
utation.*

say this notwithstanding a general allegation in the second count of the petition. These allegations are simply thrown in, and are not relied upon as being the proximate cause of the injury. However even if such allegations were present, we think there was no error on the part of the trial court in rejecting the offered testimony. Had the assault been upon a passenger, doubtless the testimony would have been admissible, but here, where Tordt clearly stepped aside from his employment to gratify some malice or spite, the testimony as to his reputation for quarrelsomeness was immaterial. Moreover, the trial court was justified in sustaining an objection to the question on account of its generality. In other words, the question did not call for his reputation in the community where he lived.

A master holds out his agent as competent and fit to be trusted, and thereby, in effect, warrants his fidelity and good conduct in all matters within the scope of his agency. Story on Bailments, sections 400, 406. But he does not and should not be held to warrant his servant's conduct in matters outside of the scope of that agency. In other words, he can not be held to be an insurer in matters not relating to the conduct of the master's business.

4. SAME: conduct of servant: liability of master.

There is no error in the record, and the judgment must be, and it is, *affirmed.*