CHARLES W. TURNER vs. THE AMERICAN DISTRICT TELEGRAPH AND MESSENGER COMPANY.

Third Judicial District, Bridgeport, April Term, 1920.
PRENTICE, C. J., WHEELER, BEACH, GAGER and CASE, Js.

A master is liable only for those torts of his servant which are committed with a view of furthering the master's business within the field of the servant's employment. If the servant turn aside from his work or task to do something unrelated to his master's business, he is, while so engaged, acting outside the scope of his employment, as much so as though his working day had ended or his task been completed.

A roundsman employed by the defendant, which conducted a burglar-alarm and night watchman supervision service, was sent by it to investigate and report by telephone concerning the failure of the

plaintiff, a private watchman of a mercantile firm, to ,"ring in " at the signal box on schedule time; and, after receiving a signed explanation from the watchman of his failure, made a taunting remark to him, which was followed by heated words and a scuffle, and then the shooting of the plaintiff by the defendant's roundsman, who was not licensed to carry concealed weapons. In a suit to recover damages for this assault, it was *held:*—

1.  That the relation of master and servant was for the time being suspended, since the roundsman during that interval was engaged not upon his master's business but upon his own.

2.  That the acts complained of were not warranted by the express or implied authority conferred upon the roundsman, considering the nature of the services required of him, the instructions given to him, and the circumstances under which the acts were done.

3.  That the fact that the roundsman was not licensed to carry concealed weapons did not render the defendant responsible, where the failure to have such a license did not contribute to the shooting.

4.  That the defendant could not be regarded as negligent when it sent out a roundsman with a revolver, in the absence of any evidence that it had or ought to have had knowledge or even suspicion that the roundsman was a reckless person, liable to fall into a passion and unfit to be entrusted with a deadly weapon.

5.  That an unequivocal intent to ratify the roundsman's wrongful act was not established merely from the defendant's continued employment of him, nor could full knowledge of his act be imputed to the defendant, in the absence of any evidence tending to show that the defendant knew of it before the termination of the employment.

Argued April 13th—decided June 10th, 1920.

ACTION to recover damages for the act of the defendant's servant in assaulting and shooting the plaintiff, brought to the Superior Court in New Haven County and tried to the jury before *Haines, J.;* verdict and judgment for the plaintiff for $3,000, and appeal by the defendant. *Error and new trial ordered.*

Miner, Read & Tullock was a mercantile firm carrying on business in New Haven and occupying for that purpose a building situated at the corner of State and Water streets. The plaintiff was employed by it as a night watchman therein. As such watchman it was his duty to make inspection rounds of the premises

at stated intervals during his hours of duty, and in the course of such rounds to "ring in" at boxes installed for that purpose at various points.

The defendant conducted a burglar alarm, night watch and sprinkler supervision service in the city, in and from a central office electrically connected with various properties in the city which it was under engagement to serve. Among these latter was the Miner, Read & Tullock establishment. Electrical connections between the company's office and this establishment were such that when the watchman "rang in" on a box, that fact would be registered in the defendant's office. If the failure to ring in was continued a certain number of minutes after schedule-time, called a period of grace, it became the defendant's duty under the terms of its employment by Miner, Read & Tullock, to send a roundsman to the place to ascertain the cause.

The New Haven operating manager of the defendant testified, without contradiction, that the duties of a roundsman sent in response to a night watch call were under their instructions to locate the watchman, and in case he should be found on duty to ascertain from him why he had failed to "ring in" according to schedule, and in addition to obtain from him a written statement of the cause of his failure entered upon a card or slip provided for that purpose and signed by the watchman, and thereupon to report by telephone to the central office from the place of business visited, or some neighboring point, and to return to that office with the signed statement.

At night the defendant's central office was in charge of a night manager, a subordinate of the operating manager, and several roundsmen were there on duty to respond to calls or alarms that might come in. A portion of the equipment of the place was a supply of

loaded revolvers, three or four in number, which lay upon a desk ready for use by the roundsmen as required.

During the night of October 18th, 1916, the apparatus in the defendant's office indicated that Miner, Read & Tullock's watchman had failed to "ring in" either on scheduled time or within the prescribed period of grace. The night manager thereupon dispatched one Sullivan, a roundsman then on duty, to answer the call. As he went he took with him, as the night manager was aware, one of the revolvers. Upon his arrival at Miner, Read & Tullock's place of business, he entered the office, which was on the second floor of the building. The watchman appeared almost immediately. As Sullivan's whereabouts were unknown to the defendant at the time of the trial, he was not present thereat, and the only testimony concerning what took place subsequent to Sullivan's arrival was that of the plaintiff whose testimony was in substance as follows: Sullivan reached the office about four-thirty o'clock in the morning. The plaintiff, having just finished his round, came in almost immediately and found Sullivan smoking. As the rules of the establishment forbade smoking on the premises, the plaintiff reproved Sullivan for his conduct, upon which the latter replied that he was doing the smoking. The plaintiff then filled out the slip presented for the purpose, by writing into the blank space provided for entering the excuse for failure to "ring in," the words, "Whole round started late," signed it and handed it back to Sullivan. The plaintiff thereupon left the office, passed into the hallway leading from it to the stairs down to the street, turned on the electric light and began to look for a broom with which to finish some cleaning. Sullivan followed shortly, and when he had reached nearly to the head of the stairs, said to the plaintiff, "Can't you keep awake

for an hour?" Thereupon a wordy altercation ensued in which sharp language was used, bad names called and ill temper displayed. In the end words led to a scuffle between the two men, and the scuffle ended by Sullivan drawing his revolver and shooting the plaintiff in the left leg.

Sullivan was not licensed to carry concealed weapons. A fellow roundsman testified that the night manager had given general orders for the roundsmen to take revolvers with them when they answered night watch calls, and the jury might reasonably have found that fact, although the operating manager testified that he knew of no such orders, nor that the roundsmen were accustomed to carry weapons in response to night watch calls. The then night manager was not present at the trial and did not testify.

*Frederick H. Wiggin* and *J. Dwight Dana*, for the appellant (defendant).

*Charles S. Hamilton*, for the appellee (plaintiff).

PRENTICE, C. J. The first of the defendant's reasons of appeal is based upon the court's denial of its motion to set aside the verdict and grant a new trial. The plaintiff claimed a recovery upon three grounds, to wit: (1) that Sullivan's unjustifiable use of his revolver was the act of the defendant's servant in the course of his employment by and on behalf of the defendant; (2) that the defendant was negligent in entrusting to Sullivan, to quote the language of the plaintiff's brief, "an unlicensed, reckless young man, a loaded revolver in violation of the statute laws of the State, when it knew, or by the exercise of reasonable care might have known, that he was an unfit and reckless person, and liable to fall into a passion, and in that it did not select

a proper and fit person for the duties assigned him''; and (3) that the defendant had ratified Sullivan's act and thus made it its own. The defendant asserts that the evidence failed to furnish a reasonable foundation of fact for either of these conclusions.

The law applicable to the first claim of recovery is well settled. In *Stone* v. *Hills*, 45 Conn. 44, 47, is a statement of the rule which has since been repeatedly approved: "The rule is that for all acts done by a servant in obedience to the express orders or directions of the master, or in the execution of the master's business, within the scope of his employment, and for acts in any sense warranted by the express or implied authority conferred upon him, considering the nature of the services required, the instructions given, and the circumstances under which the act is done, the master is responsible; for acts which are not within these conditions the servant alone is responsible." *Ritchie* v. *Waller*, 63 Conn. 155, 160, 28 Atl. 29; *McKiernan* v. *Lehmaier*, 85 Conn. 111, 114, 81 Atl. 969; *Carrier* v. *Donovan*, 88 Conn. 37, 40, 89 Atl. 894.

From this statement it appears that there are three sets of conditions under which an employee may be liable for the tort of his agent, to wit: (1) when the tortious act is done in obedience to the express orders or directions of the master; (2) when it is done in the execution of the master's business within the scope of his employment; and (3) when it is warranted by the express or implied authority conferred upon the servant, considering the nature of the services required, instructions given, and the circumstances under which the act was done.

Consideration of the first of these conditions may be dispensed with, since there is no evidence or claim that Sullivan's act was done in obedience to an express order or direction of the defendant. If conditions imposing

liability upon it for Sullivan's wrongdoing existed, they must fall under one or both of the two classes last above enumerated.

The errand upon which Sullivan was sent by the defendant had not been completed when the altercation between him and the plaintiff took place and the shot was fired. But that fact is by no means decisive of the defendant's responsibility for Sullivan's act as one done in the execution of the defendant's business and within the scope of his employment. The test of liability is not to be found in anything so artificial as its occurrence during the period of the servant's employment or before a task entrusted to the servant has been completed. It matters not that the employee's working hours have not expired, or the task to which he has been especially assigned has not been finished. If he turn aside from his work or task to do something unrelated to the master's business he is, as long as he is so engaged, as much acting outside the scope of his employment as he would be were his working day ended or his task completed. *Morier* v. *St. Paul, M. & M. Ry. Co.*, 31 Minn. 351, 352, 17 N. W. 952. The test is to be found in the nature of the tortious act and its relation or nonrelation to that which the actor was employed to do. A master is liable only for those torts of his servant which are done with a view of furthering his master's business within the field of his employment—for those which have for their purpose the execution of the master's orders or the doing of the work assigned to him to do. *Magar* v. *Hammond*, 183 N. Y. 387, 390, 76 N. E. 474; *Fairbanks* v. *Boston Storage Warehouse Co.*, 189 Mass. 419, 75 N. E. 737; *McCarthy* v. *Timmins*, 178 Mass. 378, 380, 59 N. E. 1038. "The rule recognized in all the recent cases, and which does not materially conflict with any of the old decisions, although it may qualify some of the intimations or casual

expressions or illustrations of the judges, is that for the acts of the servant, within the general scope of his employment, while engaged in his master's business, and done with a view to the furtherance of that business and the master's interest, the master will be responsible." *Mott* v. *Consumers Ice Co.*, 73 N. Y. 543, 547. "It is a general rule that an act done by a servant while engaged in his master's work, but not done as a means or for the purpose of performing that work, is not to be deemed the act of the master." *Dougherty* v. *Chicago, M. & St. P. Ry. Co.*, 137 Iowa, 257, 260, 114 N. W. 902; *Bowler* v. *O'Connell*, 162 Mass. 319, 320, 38 N. E. 498; *Fairbanks* v. *Boston Storage Warehouse Co.*, 189 Mass. 419, 75 N. E. 737.

The undisputed facts show that at the time the altercation arose which ended in the shooting, Sullivan had fully performed the errand upon which he had been sent, except that it remained for him to report to his employer's office by telephone and return to it with the card which the watchman had signed. Not a thing remained for him to do save to so telephone and return. He had no further business calling for conversation or dealing with the watchman. In so far as the latter was concerned his business was finished. When he left the hallway, whither the plaintiff in the performance of his work had preceded him, his only possible purpose connected with the performance of his assigned duties was to make his way out of the building either to seek an outside telephone or to return to the office of his employer, or both. His taunting remark there and then addressed to the plaintiff, which was the prelude of the verbal fireworks and personal conflict which preceded the shooting, did not have the remotest connection with anything he had to do for the defendant, and could not have been spoken either as a means of furthering his employer's business or with a purpose of furthering it.

This was equally true of all that subsequently transpired. In uttering the taunting language and in all that followed, Sullivan turned aside from the performance of the work committed to him by his employer to have a personal controversy of his own entirely unrelated to his employer or his employer's interests, and in no conceivable way promotive of the latter's business. The jury could not reasonably have found otherwise. "If a servant steps aside from the business of his master for never so short a time to do an act that is not a part of that business, the relation of master and servant is for the time suspended and the acts of the servant during that interval are not the master's, but his own." *St. Louis Southwestern .Ry. Co.* v. *Harvey*, 75 C. C. A. 536, 538, 144 Fed. Rep. 806, 808; *Jacquemin* v. *Turner & Seymour Mfg. Co.*, 92 Conn. 382, 103 Atl. 115.

These observations so effectively dispose of any claim that even if Sullivan's act was not done in the furtherance of his employment by the defendant, it nevertheless would be responsible for its consequences as one warranted by either the express or implied authority conferred upon Sullivan, considering the nature of the service he was called upon to render, the instructions given him, or the circumstances under which the act was done, that further consideration of that aspect of the case is uncalled for.

It remains to consider the second ground upon which the plaintiff bases his claim to recover, to wit, that the defendant in sending Sullivan upon his errand, armed with a loaded revolver, was negligent in view of the conditions stated by the plaintiff's counsel as being those shown by the evidence. One of these conditions undoubtedly existing was that Sullivan was not licensed to carry concealed weapons, but that fact can furnish no basis for civil responsibility on the part of the defendant unless Sullivan's failure to have a license

contributed in some way to the shooting. *Broschart* v. *Tuttle,* 59 Conn. 1, 18, 21 Atl. 925; *Farrington* v. *Cheponis,* 84 Conn. 1, 8, 78 Atl. 652; *Coffin* v. *Laskau,* 89 Conn. 325, 329, 94 Atl. 370. It is plain that it did not so contribute, and the jury could not reasonably have found that it did. A license in Sullivan's pocket would not have tended to keep the revolver there, nor could the nonexistence of a license by possibility have been a contributing influence in Sullivan's use of the weapon.

Another condition stated is that the defendant, when it sent Sullivan forth with a revolver, knew or ought to have known that he was a reckless person, liable to fall into a passion and unfit to be entrusted with a deadly weapon upon such an occasion. We have examined with care the testimony and fail to find even a scintilla of evidence that the defendant had or ought to have had knowledge or even suspicion that Sullivan possessed any of the traits rightly or wrongly attributed to him by the plaintiff. Without this vitally important fact the plaintiff's claim falls to the ground, since plainly it cannot be regarded as negligence to supply effective weapons of protection to one who goes upon a night errand such as was that upon which Sullivan was sent.

The plaintiff's claim of ratification is based solely upon the fact that when Sullivan reported the shooting to his superior, the night manager of the defendant's office, no reprimand was administered to him and he remained in the defendant's employ for three weeks or more thereafter. Ratification of torts by conduct can only be accomplished when the conduct relied upon is unequivocal and of a character that clearly shows an intent to ratify. To hold one responsible for a tort not committed by himself or by his orders, "his adoption or an assent to the same must be clear and explicit, and made with full knowledge of the tort, and that the injured party claims that there has been a tort com-

mitted." 1 Jaggard on Torts, 44; Chapin on Torts, 226; *Tucker* v. *Jerris*, 75 Me. 184, 188; *Adams* v. *Freeman*, 9 Johns. (N. Y.) 117, 118. Knowledge of the tort signifies not merely knowledge of the commission of the act, but knowledge of its tortious quality as well. 1 Jaggard on Torts, 44. To constitute a ratification, therefore, certain conditions at least are essential. The claimed conduct amounting to ratification must be unequivocal as evidencing an intent to ratify; it must have been had with full knowledge of the tortious quality of the act claimed to have been ratified, and it must have been had with the actual or imputed intent to ratify.

These conditions could not have been found to exist in this case. It does appear that Sullivan reported the incident to the night manager, but it nowhere appears what his report was, or that reprehensible conduct on the part of Sullivan was revealed in it. Assuming that the plaintiff's story in court was an uncolored and complete one and strictly accurate, there is no testimony tending to show that the defendant ever had it called to its attention until after Sullivan's employment by the defendant had terminated, or that any story of the affair imputing to Sullivan improper conduct in it came under its notice before his departure. Even if it did, continuance in employment alone could not fairly be regarded as unequivocally evidencing an intent to ratify. Such continuance is too readily open to explanation on other grounds. *Everingham* v. *Chicago, B. & Q. R. Co.*, 148 Iowa, 662, 665, 127 N. W. 1009; *Kwiechen* v. *Holmes & Hallowell Co.*, 106 Minn. 148, 152, 118 N. W. 668; *Buttrick* v. *Lowell*, 83 Mass. (1 Allen) 172, 174.

The other reasons of appeal do not call for consideration.

There is error and a new trial is ordered.

In this opinion the other judges concurred.