## WILLIAM J. SCHAEFER
### vs.
## PRIMO VITI, ET AL.

Court of Common Pleas    Hartford County    File #36925

### MEMORANDUM FILED FEBRUARY 25, 1938.

Joseph M. Freedman, of Hartford; Harry B. Rosenblum, of Hartford, for the Plaintiff.

Butler, Howard & Campbell, of Hartford, for the Defendant.

BORDON, J.  From the maze of conflicting testimony, the Court has gleaned sufficient facts to evolve a finding.  During the trial the Court felt that perjury ran rampant on the witness stand, but a careful study of the testimony convinced the Court that the speed with which the fracas began and ran its course caused optical illusions, overseeing and underseeing, resulting in sharply conflicting versions thereof.

The Court has, however, reached three conclusions which, in its opinion, determine the main issues between the parties. The first is that Munson delivered a blow on the plaintiff's chin after being called a vile name by the plaintiff.  The second is that the plaintiff was thereafter beaten up by patrons who, apparently, sympathized with Munson; and the third is that Viti did not participate in the assault, but evicted the plaintiff harmlessly in order to restore order in the establishment.

Let us then discuss briefly the reasons for these conclusions. The plaintiff's injuries were superficial and healed up in about two weeks.  His lip was swollen, his nose bled, and he had scratches and contusions about the face.  These resulted from the quick, spontaneous attack by the patrons who pounced upon him, and perhaps in part, from Munson's blow.  Viti, who was described by the plaintiff and some of his witnesses

as "the two ton bar tender", is a powerfully built man, weighing about 250 pounds. Had he attacked the plaintiff in the manner described by some of the witnesses, it is doubtful if two weeks would have mended the plaintiff's face. The Court believes that one blow forcefully administered by Viti would have resulted in serious injury to the plaintiff. The fact that the injuries were not serious and that he was able to be up and about immediately after the incident indicates conclusively in the Court's mind that Viti did not strike him. Furthermore, the Court cannot brush aside the testimony of the police officer who testified that he saw Viti marching the plaintiff out of the grill. For these reasons, the Court accepts the testimony of the defendants' witnesses on this point and finds that Viti did not assault the plaintiff, and that what he did do in evicting him from the place was justified and necessary for the preservation of order in the grill.

It is also found that the injuries suffered by the plaintiff came almost entirely from the acts of patrons, who, without the knowledge or consent of the defendants, assaulted him because he had used vile language. The Court can find no authority for holding the owners of an establishment liable for an assault committed by patrons.

We come now to the first conclusion reached by the Court, namely, that Munson did in fact punch the plaintiff on the chin. It appears that the defendants had a rule that no man could dance in their place unless he was accompanied by a lady when he came there. This rule was not strictly enforced because it was difficult for the owners to detect violations, and frequently men danced with women whom they met there. The plaintiff attempted to do this but was detected by Munson and requested to refrain from dancing. Undoubtedly his detection was due to the fact that he had attracted more than usual attention by motioning to the lady who was in the dance hall, and by running from the bar to the dance hall and back again. When Munson requested him to refrain from dancing, he was acting within the scope of his employment. The plaintiff, however, instead of complying quietly with the request and going about his business, created a slight disturbance by demanding an explanation and making some "wisecrack" about the place not being the Hotel Astor. Munson wisely and properly called the proprietor who repeated the request, and the incident ended with the plaintiff either going back to the bar or being taken back by Gold. At any rate, Munson went

about his business and the plaintiff resumed his position at the bar finishing his drink. All was quiet and peaceful until a moment later, while Munson was passing the bar near where the plaintiff stood, he overheard the plaintiff call him a vile name. Munson resented it, took off his glasses, and punched the plaintiff on the chin. The plaintiff fell backwards on a table standing near the bar, and was immediately jumped upon by patrons sitting at nearby tables. Munson had no right to punch the plaintiff. The vile name he was called did not justify the assault. Were he a defendant he would be liable for so much of the injury as resulted from the blow struck by him. But the legal problem that confronts us is whether the defendants are liable for Munson's acts under the circum-stances. Does this case fall within the doctrine laid down by *Son vs. Hartford Ice Cream Company,* 102 Conn. 696, or within that laid down by *Turner vs. American District Tele-graph & Messenger Co.,* 94 Conn. 707?

The law in this state is well settled.

"The rule is that for all acts done by a servant in obedience to the express orders or directions of the mas-ter, or in the execution of the master's business, within the scope of his employment, and for acts in any sense warranted by the express or implied authority conferred upon him, considering the nature of the services required, the instructions given, and the circumstances under which the act is done, the master is responsible; for acts which are not within these conditions, the servant alone is re-sponsible." *Stone vs. Hills,* 45 Conn. 44, 47. See, also, *Ritchie vs. Waller,* 63 Conn. 155.

Do the facts in this case bring it within the above defini-tions? Was the tortious act done in obedience to the express orders or directions of the master? Was it done in the exe-cution of the master's business within the scope of his employ-ment? Was it warranted by the express or implied authority conferred upon the servant?

With the facts in this case as the Court must find them, all of the above questions must be answered in the negative. That being so, it follows that Munson's assault on the plaintiff was caused by personal resentment because of the vile name directed at him, and had nothing whatsoever to do with his employment.

"The test of liability is not to be found in anything so

artificial as its occurrence during the period of the servant's employment or before a task entrusted to the servant has been completed. It matters not that the employee's working hours have not expired, or the task to which he has been especially assigned has not been finished. If he turn aside from his work or task to do something unrelated to the master's business, he is, as long as he is so engaged, as much acting outside the scope of his employment as he would be were his working day ended or his task completed. . . . The test is to be found in the nature of the tortious act and its relation or nonrelation to that which the actor was employed to do. A master is liable only for those torts of his servant which are done with a view of furthering his master's business within the field of his employment—for those which have for their purpose the execution of the master's orders or the doing of the work assigned to him to do." *Turner vs. American District Telegraph & Messenger Co., supra,* at p. 713.

An act done by a servant while engaged in his master's work, but not done as a means, or for the purpose of performing that work, is not to be termed the act of the master. *Dougherty vs. Chicago M. & St. P. Ry. Co.,* 137 Iowa 257.

The facts in the instant case are clear that at the time of the altercation Munson was doing nothing in furtherance of his master's work. He was avenging a private insult which had nothing whatsoever to do with his duties as a waiter in the defendants' establishment.

The issues are found and judgment may be entered for the defendants to recover their costs.