## PETER RITCHIE *vs.* WILLIAM WALLER.

New Haven & Fairfield Cos., April T., 1893. ANDREWS, C. J., CARPENTER, TORRANCE, FENN and BALDWIN, Js.

The defendant, who had for several years been accustomed to get manure from a brewery in a city for his farm in a neighboring town, hired *B* as a farm laborer, and had him frequently go with his team to procure and haul it, going first with him himself to show him the place, and taking a direct route in the city, but giving him no directions as to the route he should follow there. On a certain occasion when *B* had been so sent, and with no directions as to his route in the city, he started with his load for home, but went through a different street and less direct route, and stopped on an errand of his own, leaving his

Ritchie *v.* Waller.

horses for a few minutes standing unhitched in the street. While so left they started forward and before they had gone far ran into and upset the plaintiff's wagon, injuring him and the wagon. The court below held that the defendant was liable for the injury. Held that the court properly so decided.

The question in such a case is, whether or not the act was done in the execution of the master's business within the scope of his employment.

If the servant in going *extra viam* is really engaged in the execution of the master's business within the scope of his employment, it is immaterial that he joined with this some private business or purpose of his own.

Where the question of the master's responsibility turns principally upon the mere extent of the deviation by the servant from the strict course of his employment or duty, it has been generally held to be one of fact and not of law.

In cases where the deviation is slight and not unusual the court may, and often will, as matter of law, determine that the servant was still executing his master's business.

So too, where the deviation is very marked and unusual, the court may determine that the servant was not on the master's business, but on his own.

Cases falling between these extremes will be regarded as involving merely a question of fact, to be left to the jury or other trier of such questions.

[Argued April 18th—decided May 22d, 1893.]

ACTION for an injury to the person and property of the plaintiff through the negligence of the defendant's servant; brought to the Superior Court in Fairfield County and tried to the court upon a general denial before *J. M. Hall*, J. Facts found and judgment rendered for the plaintiff, and appeal by the defendant. The case is fully stated in the opinion.

*J. J. Rose* and *G. P. Carroll*, for the appellant.

In the case of torts the doctrine of *respondeat superior* applies only where the master has directed the tortious act of his servant, or where such act is incidental to the performance of the services for the master and is in the line of such performance. Since there is no clothing of the servant with any indicia of apparent authority, in reliance upon which the plaintiff is supposed to have acted, the master is not liable for those acts which lie, so to speak, within the penumbra of the authority actually conferred upon the servant. Wood's Master & Servant, §§ 277–280; Shearm. & Redf.

Ritchie *v.* Waller.

on Neg., § 146 *et seq.;* Mechem on Agency, § 737 *et seq.;* *Wood* v. *Cobb*, 13 Allen, 58; *Hawes* v. *Knowles*, 114 Mass., 518; *Levi* v. *Brooks*, 121 id., 501; *McCann* v. *Tillinghast*, 144 id., 327; *Morier* v. *St. Paul etc. R. R. Co.*, 31 Minn., 351; *Stevenson* v. *Southern Pacific Co.*, 93 Cal., 558; *Dells* v. *Stollenwerk*, 78 Wis., 339; *Ayrigg's Ex'rs* v. *N. York & Erie R. R. Co.*, 30 N. Jer. Law, 460; *Mott* v. *Consumers' Ice Co.*, 73 N. York, 543; *Mars* v. *Delaware & Hudson Canal Co.*, 54 Hun, 625. The accident in the present case did not occur by reason of Blackwell's making a detour the better to carry out his master's business. Nor did he stop and get his shoes mended at a place on the line of any imaginable route home from the brewery. But he had clearly and unequivocally thrown off his master's employment as regards both place and circumstance, and, without the latter's knowledge or consent, was then engaged in a matter of his own private business. This by all the authorities is sufficient to save the master from all liability. *Thames Steamboat Co.* v. *Housatonic R. R. Co.*, 24 Conn., 40; *Crocker* v. *N. London, Will. & Palmer R. R. Co.*, id., 249; *Phelon* v. *Stiles*, 43 id., 426; *Stone* v. *Hills*, 45 id., 47; *Howe* v. *Newmarch*, 12 Allen, 49, 57; *Walton* v. *N. York Central Sleeping Car Co.*, 139 Mass., 556.

*N. W. Bishop* and *E. O. Hull,* for the appellee.

TORRANCE, J. This is an action against a master for damage caused by the negligence of his servant.

The court below, upon the facts found, decided that the injury occurred solely through the negligence of the servant. One of the claims of the defendant, though it was not pressed on the argument, is that the court, as matter of law, erred in so doing. Upon this point it is sufficient to say that the record does not present any question of law for review. Upon the facts as they appear of record we must regard the decision of the trial court upon this point as final and conclusive.

In the discussion of the case, therefore, we will assume

that the negligence of the servant and the damage resulting therefrom have been determined against the defendant, and that the question of the responsibility of the master therefor alone remains to be considered.

The facts bearing upon this question are in substance the following: The defendant is a farmer in Trumbull, and at the time of the injury, in September, 1891, and for some years prior thereto, had been accustomed twice a week to get manure for his farm from a brewery on North Washington Avenue in Bridgeport. This avenue and Main street intersect at a point called Bull's Head, about a thousand feet south of the brewery. The avenue and Main street are connected by three cross-streets, called respectively, beginning with the one next north of Bull's Head, Mulloy's Lane, Grand street and Commercial street. The brewery is nearly opposite the point where Mulloy's Lane enters the avenue.

In December, 1890, the defendant hired the servant in question, whose name is Blackwell, as a farm laborer. Soon thereafter the defendant, for the purpose of getting a load of manure, and of showing Blackwell the place to procure it in the future, drove with him from the farm to the brewery, passing down Main street to Grand, through Grand to North Washington Avenue, and thence southerly to the brewery. After getting a load they returned through Grand street to Main, and thence northerly home. Neither at that time nor on any subsequent occasion did the defendant give any special directions or instructions as to what particular route Blackwell should follow in going to or returning from the brewery with manure, although he supposed Blackwell took the same route followed on the first occasion above mentioned. In fact Blackwell went or returned sometimes by way of Mulloy's Lane, and sometimes by way of Grand or Commercial street, and the defendant never at any time made any inquiries as to what route he took.

On the day of the injury the defendant told Blackwell to go to the brewery after a load of manure and to spread it on a designated lot on the farm. These were all the directions

given to him.   The defendant did not know that he intended to go to any other place.

Pursuant thereto Blackwell, with the wagon and two horses of the defendant, went to the brewery and procured a load of manure.   After so doing, instead of returning to Main street through the lane or Grand or Commercial street, and going thence northerly towards Trumbull as usual, Blackwell drove southerly down the avenue to Bull's Head, and thence into Main street, and thence northerly in the direction of home till he came to a certain shoemaker's shop on Main street southerly of Mulloy's Lane.   There he got off his wagon, leaving his team for about five minutes, and went into the shoemaker's shop.   Blackwell's purpose and object in so doing was to see the shoemaker about soleing or mending the shoes belonging to and then worn by him.   While he was in the shop the team started at a slow trotting gait up Main street, till it came opposite the plaintiff's market, where the wheels of the defendant's wagon caught in the left rear wheel of the plaintiff's wagon, upsetting the same, and causing the injuries to the plaintiff and his property referred to in the complaint.

Blackwell was employed by the month, and the carting of the manure was within the ordinary scope of his employment as a servant of the defendant, and he was in the service of the defendant at the time of the accident.

Just here it may be well to call attention to two points in the finding, and to settle its interpretation with reference to them.   After stating that Blackwell drove around to the shoemaker's shop, and there left his team and went into the shop, the court, as we have seen, adds that " Blackwell's purpose and object in so doing was to see the shoemaker about soleing or mending his shoes."   Now whether the phrase " in so doing " refers to the entire conduct of Blackwell from the time he left the brewery till the horses ran away, or only to his act in leaving them and going into the shoemaker's shop, is perhaps not free from doubt.   We will assume, however, in accordance with what seems to be the claim of the

defendant, that the phrase in question refers to the entire conduct.

Again, the finding is that Blackwell "was in the service of the defendant at the time of the accident." This may mean simply that at the time of the accident his term of service had not expired and that he had not been discharged, or it may mean that in making the detour he was and continued to be in the execution of the master's business within the scope of his employment. We shall, for the purposes of the discussion, assume that the former meaning is the correct one.

Whether then upon the facts found the master is responsible for the negligence of the servant is the important question. The general rule of law applicable in this class of cases is accurately and comprehensively stated in *Stone* v. *Hills*, 45 Conn., 47, as follows:—"For all acts done by a servant in obedience to the express orders or directions of the master, or in the execution of the master's business, within the scope of his employment, and for acts in any sense warranted by the express or implied authority conferred upon him, considering the nature of the services required, the instructions given, and the circumstances under which the act is done, the master is responsible; for acts which are not within these conditions the servant alone is responsible."

Of these "conditions" of liability, the one under which the present case seems to fall, if it falls under any of them, is the one for acts done "in the execution of the master's business within the scope of his employment." This rule or "condition" of liability is in itself simple and intelligible enough, but in determining whether any particular case falls within it or not difficult and troublesome questions may arise. "The cases which have arisen upon this subject have from the earliest times been productive of much astute and interesting discussion in courts of law, and eminent judges have differed widely in their decisions. It has always been a matter of extreme difficulty to apply the law to the ever varying facts and circumstances which present themselves." *Rayner* v. *Mitchell*, L. R., 2 Com. Pleas Div., 357.

In reality, however, the difficulty here spoken of arises in ascertaining whether the act was done in the execution of the master's business within the scope of his employment, which as we shall see is ordinarily a question of fact, and not in applying the rule when that fact has been ascertained. This fact once determined, the rule can be easily applied, but the rule cannot at all aid in the determination of the fact. The rule tells us that the master's liability depends upon whether the acts were done in the execution of his business within the scope of his employment, but it does not help us to determine whether they were or not so done.

In like manner the general rule of construction is that the intent of the parties shall prevail. This tells us what to do when the intent has been ascertained, but affords no aid in a particular case in ascertaining what the intent is. Whether then the act of a servant, for which it is sought in a particular case to hold the master responsible, was done in the execution of the master's business within the scope of the employment or not, must from the nature of things in most cases be a question of fact to be determined as such by the jury or other trier, because no general rule of law has been or probably can be laid down the application of which will determine the matter in all cases. Sometimes, however, this question is determined by the court as a matter of law. But in by far the greater number of cases where the question of the master's responsibility turns, as in the present case, principally upon the mere extent of deviation by the servant from the strict course of his employment or duty, it has been generally held to be one of fact and not of law.

In such cases it is, and must usually remain, a question depending upon the degree of deviation and all the attendant circumstances. In cases where the deviation is slight and not unusual, the court may, and often will, as matter of law, determine that the servant was still executing his master's business. So too, where the deviation is very marked and unusual, the court in like manner may determine that the servant was not on the master's business at all, but on his own. Cases falling between these extremes will be regarded

as involving merely a question of fact, to be left to the jury or other trier of such questions.

Thus, in *Phelon* v. *Stiles*, 43 Conn., 426, the deviation by the servant from the strict course of his duty was so slight that this court, as matter of law, held the master liable; while in *Stone* v. *Hills*, 45 Conn., 44, the deviation was so marked and unusual that it refused to hold the master responsible.

On the other hand, where a servant, contrary to his duty, and solely for a purpose of his own, drove his master's horse and cart a quarter of a mile out of the way, the question whether in and while so doing he was in the execution of his master's business within the scope of his employment, was left to the jury as a question of fact. *Whatman* v. *Pearson*, L. R., 3 Com. Pleas, 422. "Whether the servant is really bent on his master's affairs or not is a question of fact, but a question which may be troublesome." Pollock on Torts, side p. 71. In the following cases, among many others, this question was decided as one of fact. *Kimball* v. *Cushman*, 103 Mass., 194; *Redding* v. *So. Car. R. R. Co.*, 3 So. Car., 1; *Rounds* v. *Del., Lack. & Western R. R. Co.*, 64 N. York, 129; *Cormack* v. *Digby*, 9 Irish Rep., Com. Law Series, 557; *Burns* v. *Poulson*, L. R., 8 Com. Pleas, 563.

In cases of deviation the authorities are clearly to the effect that a mere departure by the servant from the strict course of his duty, even for a purpose of his own, will not in and of itself be such a departure from the master's business as to relieve him of responsibility. "Not every deviation of the servant from the strict execution of his duty, nor every disregard of particular instructions, will be such an interruption of the course of employment as to determine or suspend the master's responsibility. But where there is not merely deviation but a total departure from the course of the master's business, so that the servant may be said to be 'on a frolic of his own,' the master is no longer answerable for the servant's conduct." Pollock on Torts, side p. 76.

In the case of *Joel* v. *Morrison*, 6 Car. & Payne, 501, the jury were told that if the servant with his master's horse and

cart made a detour in order to call upon a friend, or if when driving on his master's business he went out of his way against his master's implied commands, the master remains liable for the servant's negligence while *extra viam;* but that " if he was going on a frolic of his own, without being at all on his master's business, the master will not be liable."

If the servant in going *extra viam* is really engaged in the execution of the master's business within the scope of his employment, it is immaterial that he joined with this some private business or purpose of his own. Thus in *Patten* v. *Rea*, 2 Com. Bench, N. S., 605, the servant started out on business of the master, and also to see a doctor on his own account. While on his way to see the doctor he negligently drove against a horse and killed it, and the master was held responsible.

In *Sleath* v. *Wilson*, 9 Car. & Payne, 607, the master was held liable for the negligent act of his servant, who, after having set his master down, drove around to deliver a parcel of his own, and did not drive directly where he had been ordered to go. See the case also of *Cormack* v. *Digby, supra,* upon this point. In *Story* v. *Ashton*, L. R., 4 Q. B. Cases, 476, Chief Justice COCKBURN says:—" I think that if a driver while acting in his master's business were to make a slight deviation to carry some business of his own into effect, in such a case the master might be liable, and that the question would be one of degree as regards the extent of the deviation. * * * I am far from saying if the servant when going on his master's business took a somewhat longer road, that owing to the deviation he would cease to be in the employment of the master so as to divest the latter of all responsibility ; in such cases it is a question of degree as to how far the deviation could be considered as a separate journey."

In *Whatman* v. *Pearson, supra,* the servant with the horse and cart of the master, contrary to express orders went a quarter of a mile out of his way purely for a purpose of his own, and the master was held responsible. In *Mitchell* v. *Crassweller*, 13 Com. Bench., 237, MAULE, J., said:—" The

master is liable even though the servant in the performance of his duty is guilty of a deviation, or a failure to perform it in the strictest and most convenient manner."

In some of its aspects the case of *Quinn* v. *Power*, 87 N. York, 535, is somewat similar to the case at bar. There a boatman at a certain town on the Hudson river applied to the pilot in charge of a ferry boat, asking to be put on board of a canal boat then in mid-stream. The pilot, without compensation and apparently out of mere "good nature," agreed to do so. Similar acts had occasionally been done before, but without the knowledge or express authority of the master. To reach the canal boat the pilot diverged from his regular course, and while so out of his course, through the negligence of those in charge of the ferry boat, a collision with a canal boat occurred. In behalf of the master it was urged that his servants, when the collision occurred, were not acting in his business or within the scope of their employment, but in the execution of an independent purpose of their own not connected with the master's business. But upon this point the court said :—" We do not concur in this view of the transaction. At most it appears to us a case where the servant, while acting in the master's business, and within the scope of his employment, deviated from the line of his duty to his master and disobeyed his instructions. When this ferry boat left the dock at Athens it started for its terminus at Hudson. It took freight and passengers to transfer across the river. Servants and boat, as the latter moved out into the river, were doing the master's business and acting in the line of duty and of employment. There was a usual track or route by which the boat crossed. It may even have been selected and dictated by the owner. In deviating from it the servants might disregard the instructions of the master, but they were none the less engaged in the master's business of transporting passengers from Athens to Hudson because they did not follow the usual route or pursued another or even a forbidden track. They were still doing their employer's work, though in a manner contrary to his instructions. If they stopped the boat in the middle

of the river, they did not cease to be engaged in the master's business. Even if the motive was some purpose of their own, they were still about their usual employment, although pursuing it in a way and manner to subserve also such purpose. When they took this passenger to the tow, and in so doing deviated from the usual route and stopped the boat mid river for that reason, they were still engaged in the master's business of transporting freight and passengers across the river. They were doing it in a mode and manner perhaps not authorized, and possibly in some sense to effect a purpose of their own, but none the less acting within the scope of their employment and engaged in the master's business."

Some of the above remarks are quite applicable to the case at bar. In making the detour Blackwell was still in charge of his master's team, though on a roundabout way home, carting manure to his master's farm. That was his main purpose and object throughout the entire transaction. In the language of the case last cited, even if the motive was some purpose of his own, he was still about his usual employment, although pursuing it in a way and manner to subserve such purpose also.

Applying these principles to the case at bar, the question for the court below was whether or not Blackwell, for the time being, totally departed from the master's business and set out upon a separate journey and business of his own. If the rule of law were that any deviation by the servant " to carry some business of his own into effect," was of itself such a departure, the above question would be one of law. But this, as we have seen, is not the rule of law. To decide the question in a case like the present, the trier must take into account, not only the mere fact of deviation, but its extent and nature relatively to time and place and circumstances, and all the other detailed facts which form a part of and truly characterize the deviation, including often the real intent and purpose of the servant in making it.

Without spending more time upon this point, we think the above question is one of fact in the ordinary sense, and

that the case at bar clearly falls within the class of cases where such question is strictly one of fact to be decided by the trier. As such we think the court below decided it. It is true that upon our interpretation of the finding the court below has not found formally and in terms that Blackwell during the time of the detour was in the execution of his master's business, and perhaps such interpretation does that court an injustice ; but, however this may be, the court in deciding as it did necessarily found that Blackwell continued in the execution of the master's business all the time, and this is enough without so finding in terms. This court will not review such a finding upon the errors assigned.

If, however, we should hold the question raised upon this point to be one of law, we have no hesitation in saying that the court below reached the correct conclusion on the facts found. In either point of view then there is no error.

The remaining question relates to the allowance of the amendment. The complaint alleged that the damage was done by the defendant, while the proof was that it was done by his servant. After the plaintiff rested, the defendant moved for a nonsuit on the ground of this variance, and the court permitted the plaintiff to amend his complaint in this respect. According to the record, the only objection made by the defendant was a general one to the allowance of the amendment, and the error assigned upon this point seems to relate wholly to the allowance of the amendment. Under the statute, § 1023, the court clearly had the discretionary power to allow the amendment, and the power for aught that we can see was very properly exercised. *Santo v. Maynard,* 57 Conn., 157.

The real grievance of the defendant, however, upon this part of the case, as stated upon his brief, seems to be that he was not allowed time to demur to the amended complaint. Now if we admit for argument's sake that the amended complaint was demurrable, there are two sufficient answers to this claim of the defendant. The first is that it is not fairly included in the assignments of error, and the second is that it nowhere appears that the defendant asked or offered

to demur, or that his right to do so was questioned or denied by the court below.

There is no error in the judgment appealed from.

In this opinion the other judges concurred.