49 So.2d 318

**BIRMINGHAM ELECTRIC CO. v. GRADDICK et al.**

6 Div. 906.

Court of Appeals of Alabama.

Oct. 3, 1950.

Rehearing Denied Oct. 31, 1950.

Lange, Simpson, Robinson & Somerville, of Birmingham, for appellant.

Taylor, Higgins, Windham & Perdue, of Birmingham, for appellees.

HARWOOD, Judge.

Mrs. Inez Graddick sustained injuries while a passenger on appellant's bus, and instituted her suit for damages.

Mr. George D. Graddick, her husband, likewise filed suit based on loss of his wife's services.

The cases were consolidated for trial, the evidence in each case being identical.

Mrs. Graddick recovered a verdict and judgment for $1,000.00, and Mr. Graddick was awarded $100.00.

Motions for new trials being overruled as to each case separate appeals were perfected to this court, but on a consolidated record.

Each of the complaints contained wanton counts. General verdicts in favor of the respective plaintiffs were rendered by the jury.

The sole point presented by appellants' counsel on these appeals relates to the court's refusal to give at appellants request a charge affirmative in nature, as to the wanton counts.

The evidence presented by the plaintiffs below was to the effect that around nine o'clock on the morning of 19 November 1947, Mrs. Graddick was in the process of disembarking from a bus belonging to appellant, the bus being stopped at a usual loading and unloading place at First Avenue North and 19th Street in downtown Birmingham.

At this time the bus was struck from the rear by a street car also owned and operated by the appellant. The impact of this collision caused Mrs. Graddick to fall, sustaining the injuries complained of.

There had been a light shower on the morning in question, sufficient to make the street slick.

No skid marks, indicating the bus was moved by the impact, were found by a police officer who was nearby at the time of the collision.

For the appellant Mr. Willie L. Cashman, operator of the street car involved, testified that at the time of the collision the streets were wet, and traffic was fairly heavy. The street car was going west on 1st Avenue, and he had stopped at 20th Street. After leaving 20th Street nothing unusual happened, and the street car was

moving approximately between 3 and 5 miles per hour; there was a bus ahead of him stopped and unloading passengers; he applied his brakes with the intention of stopping behind the bus, but when he did the wheels of the street car locked; that travelling three to five miles per hour, without anticipating that the conditions would cause the wheels to slide, there was sufficient distance to stop after application of the brakes; when the wheels began to slide he sanded the track and reversed the motor; the street car was not going fast when it hit the bus, which was only jarred by the impact.

On cross examination Mr. Cashman testified that when he first applied the brakes he was between 35 and 40 feet from the bus; the wheels locked and started sliding when he first applied the air brakes; in the usual application of service brakes there is no sand, but when emergency brakes are operated there is sand and brakes; there was a very slight down grade at the area of the collision, but sufficient for the car to roll by itself; he reversed the motor when 10 or 12 feet from the bus, which he had been following from one loading zone to another for about four blocks; there had been a slight mist of rain, and he knew the track was slick.

Mr. W. B. Lambert, the operator in charge of the bus, testified for the defense that he did not see the street car before the collision; when he opened the door to discharge passengers the brakes of the bus were locked; the bus was not moved by the impact, only jarred.

On cross examination he stated that he had operated street cars; that there was an unusual weather condition on the morning in question, and the street car tracks were what might be called "sweaty," and mighty slick; under such conditions, when brakes are applied the wheels will lock and slide several feet before stopping; this fact is well known to operators of street cars, and are supposed to be taken into account in stopping a car.

Mr. Lambert was asked whether travelling at a rate of 3 to 5 miles per hour on a track, and under conditions prevailing on this morning, what distance it would re-quire to stop after the wheels started sliding, upon reversing the motor.

He answered that in such a situation when the wheels locked the car moved faster; that it is a proper thing to sand the track and reverse the motor, and that will sometimes stop the car; and that by the time the brakes are applied, motor reversed, and tracks sanded a car might slide as much as 25 feet, though you cannot be sure, as it depends on whether you have a slight grade or leval grade, whether it will slide thirty, or forty, or fifteen feet.

■ As stated in Sheffield Company v. Harris, 183 Ala. 357, 61 So. 88, 90:

"A motorman in charge of a street car running upon a track which is imbedded in and forms a part of the street is charged, by the law, at all times, whether his car is in a street which is frequently or one which is seldom used by the public, with *constant watchfulness* for those who, in using or crossing the street, go upon or in dangerous proximity to the track. He is also required to operate his car under such speed and with such control that, if 'persons or property be upon or dangerously near the track of the street railway, the car may be, with skilled application of stopping appliances, stopped, and injury thereto averted.' Anniston Electric & Gas Co. v. Rosen, 159 Ala. [195] 202, 48 So. [798] 801, 133 Am.St.Rep. 32.

\*   \*   \*   \*   \*   \*

"It is also a familiar proposition that a rate of speed which a street car may, with perfect safety, maintain at a given point on a street at one time, may, at another time, amount to that reckless indifference to the rights of others as to amount to wantonness."

■ Further, it was not necessary that the plaintiffs below show that the car was operated at a reckless rate of speed in order to recover under the wanton counts, their burden under such counts being to show a reckless disregard of consequences in the operation of the street car, coupled with a knowledge of conditions from which injury is likely and will in all probability result, whether the car was negligently operated or not as to speed. Mobile, Light

& R. Co. v. McEvoy, 16 Ala.App. 46, 75 So. 191; Smith v. Clemmons, 216 Ala. 52, 112 So. 442.

There was ample evidence from which the jury could reasonably infer that, on the morning in question the street car tracks, because of unusual weather, were sweaty and very slick; that under such conditions the wheels of the car will slide, and the car gain momentum when brakes are applied; which facts were known, or should have been known, to the operator; that he had followed the bus for several blocks in downtown Birmingham at an hour when traffic was fairly heavy; the operator saw the bus stopped at a regular loading zone, and in line of travel of the street car; the street car, according to the testimony of the operator was travelling at a rate of 3 to 5 miles per hour, when brakes were applied, 35 or 40 feet from the bus, but slid and struck the bus while still travelling at a rate of 2 to 3 miles per hour; the tracks were slightly down grade at this point; according to Mr. Lambert, a witness for the defendant, a car, under such conditions might slide as much as 25 feet upon application of brakes, though "you cannot be sure," depending on the grade, whether it will slide 25, 40, or 15 feet.

All of the above evidence, with the inferences to be reasonably drawn therefrom warranted the lower court in refusing the affirmative charges requested by the defendant as to the wanton counts.

Affirmed.