57 So.2d 540

## PURITY ICE CO., Inc. v. TRIPLETT.
### 6 Div. 232.

Supreme Court of Alabama.
March 13, 1952.

Geo. W. Yancey, Bibb Allen and London & Yancey, all of Birmingham, for appellant.

Gibson & Gibson and C. W. Bates, all of Birmingham, for appellee.

STAKELY, Justice.

This action grew out of an accident which occurred on December 10, 1950, in Birmingham, Alabama, at the intersection of 5th Avenue North and 33rd Street. The suit was brought by Mrs. Elsie Triplett (appellee) against Purity Ice Company, Inc. (appellant), for injuries alleged to have been received by her while she was riding in a 1949 Ford automobile driven by Claud L. Ellard, the owner of the Ford car. The complaint consisted of two counts, one a count in simple negligence and the other a count based on wanton misconduct. To both of these counts the defendant pleaded the general issue in short by consent. The

118

court allowed the case to go to the jury on both counts with the result that the jury rendered a verdict in the amount of $10,000. There was a motion for a new trial which the court overruled.

Two questions are presented on this appeal, error being predicated (1) on the action of the court in refusing to give the affirmative charge for the defendant on the wanton count and (2) on the action of the court in overruling the motion for a new trial, it being the insistence that the verdict was excessive.

■ I. In determining the propriety of a general affirmative charge when requested by the defendant, the evidence favorable to the plaintiff must be accepted as true. Alabama Power Company v. Buck, 250 Ala. 618, 35 So.2d 355. Accordingly tendencies of the evidence most favorable to the plaintiff will be stated, much of which evidence is without dispute.

On December 10, 1949 at about 4:20 P.M. Mrs. Elsie Triplett (appellee) was riding in a 1949 Ford automobile driven by Claud L. Ellard, the owner, in the City of Birmingham, Alabama. This car headed east on 5th Avenue North had stopped for a traffic light at the intersection of 5th Avenue North and 33rd Street and was in the right center line of traffic with two other automobiles also stopped for the traffic light standing in front of it. The light was of the type which permits vehicles in the extreme right line to make right turns, while those wishing to go straight through were halted. There was considerable traffic at that point. The car in which the plaintiff was riding had been stopped for several seconds, the time being estimated at from two to five seconds. It was headed upgrade and Claud L. Ellard, the driver, was holding it with his foot brake. The nearest automobile in the same line was eight or ten feet ahead of the Ford. The Ford had been in the same lane of traffic for several blocks before it reached the traffic light. Prior to stopping it was going at about twenty miles per hour, and the driver braked it to a halt in about two car lengths when he saw the light turn red and the car in front of him coming to a stop. The Ford was equipped with red warning lights on the rear, which were lighted and remained lighted while the brakes were applied.

A few seconds after the Ford stopped it was struck a blow in the rear by the ice truck of Purity Ice Company, Inc. (appellant). At the time of the accident the street which was surfaced with asphalt was wet and it was raining. The truck overrode the rear bumper of the Ford and hit the rear of its body. The impact threw Mrs. Elsie Triplett and Claud L. Ellard, the occupants of the Ford, backward with such force that it broke off the back rest portion of the front seats and then both occupants were thrown forward. They were both dazed but not thrown out of the car. Mrs. Elsie Triplett was driven from the scene in the same car and assisted into her house. The trunk and back end of the Ford were crushed. The rear seat was pushed under the front seat and the backs of the two front seats were broken off by the impact.

The truck of the defendant was a 1½ ton Chevrolet truck and loaded with 600 or 700 lbs. of ice. Its driver Henry May was experienced in driving the truck and he was conscious that the wet street increased the distance required to stop the truck. He was looking ahead and had seen the traffic light turn red against him while still nearly a block from the point of collision. The truck was within 3 or 4 feet of the automobile standing before him before he applied his brakes or made any effort to slacken speed. He testified that he was driving at 20 miles per hour at the point of the accident but also stated in answer to interrogatories that he was driving 25 miles per hour at a point 100 feet west of the point of collision. He testified that if the ground was not wet he could stop the truck in 4 feet, but that he did not stop the truck in 4 feet because it skidded. According to him it skidded about 3 or 4 feet before he hit the car in which the plaintiff was riding. The force of the impact was great enough to knock the car in which the plaintiff was riding upgrade 15 feet with its brakes on, with the effect on the car as stated above.

■ We feel satisfied that from this evidence the jury had the right to infer that the driver of the ice truck, conscious of the

conditions of the traffic and weather prevailing and that such conditions called for caution to avoid a collision and conscious that the Ford was standing in his path halted by a red traffic signal, did nothing to reduce the speed of his heavy truck, but on the contrary, looking ahead, conscious that his course would probably result in disaster, with reckless indifference to the probable consequences, drove it within 3 or 4 feet of the motionless Ford car without warning or effort to avert the collision and struck it a smashing blow. Birmingham Electric Co. v. Graddick, 35 Ala.App. 484, 49 So.2d 318, certiorari denied 254 Ala. 556, 49 So.2d 320; Hood & Wheeler Furniture Co. v. Royal, 200 Ala. 607, 76 So. 965; Sheffield Co. v. Harris, 183 Ala. 357, 61 So. 88; Schmidt v. Mobile Light & R. Co., 204 Ala. 694, 87 So. 181; J. C. Byram & Co. v. Livingston, 225 Ala. 442, 143 So. 461; Granberry v. Barter, 209 Ala. 257, 96 So. 148; Louisville & N. R. R. Co. v. Brown, 121 Ala. 221, 25 So. 609. The request for the affirmative charge on the wanton count was properly refused.

II. At the time of the accident Mrs. Elsie Triplett stated to a policeman that she was not hurt. Later on in the evening of the same day of the collision she was taken to the hospital where she complained of headache, pain in her neck, back and legs and nausea. She appeared to be very nervous and seemed not entirely rational. She had a lump on the back of her head but no other external evidence of injury. Prior to the accident her health was generally good but tendencies of evidence show that it has been poor since that time. She remained in the hospital four or five days where x-ray photographs were made and she was given sedatives and other medicines. Since the accident plaintiff has been to the office of Dr. Somerset every month for headaches, stomach troubles, female trouble and disabling backaches. She was last treated by Dr. Somerset about 19 days prior to the trial of this cause when her back was very rigid and painful. At the time of the trial she had a paraesthesia or numbness of one leg. Dr. Somerset testified that in his opinion she would probably need an operation to stiffen the vertebra in her lower back, which would probably correct her organic trouble but would not cure her post-occipital headache or the neurosis, much of which he considered permanent. She suffered serious female disorders, especially during the three or fourth months following the collision, which had not been corrected at the time of the trial. The back trouble was produced by the blow in the wreck. The female disorders and other troubles were the result of post traumatic neurosis and extreme fright. She was found to have a sacroiliac or sacro-lumbar slip and x-rays revealed a dark spot on her brain. There was however no fractured vertebra or other visible injury to the vertebra. In the opinion of Dr. Somerset an operation would tend to improve the back symptoms. Heat and strapping had been prescribed as treatment. Slipping of the vertebra had on several occasions thrown plaintiff into a spasm, requiring a week or ten days of diathermy treatments to afford relief.

Dr. Fletcher Comer, an orthopedic surgeon, was appointed by the court to examine the plaintiff and had done so five days prior to the trial. He examined the x-rays which had been made of her. He found no fractured vertebrae nor did he find a slipped disk, but a mild curvature of the spine was found. There was some evidence of arthritic changes which normally come to persons as they grow older. He considered an operation to fuse the vertebrae unnecessary and unwise. In his opinion plaintiff had a mild lumbosacral strain but her physical complaints were out of proportion to his physical findings. "She went to pieces" and cried during his examination and was very nervous. She cried especially at pressure over the left sacroiliac joint. He gave her a muscle relaxant drug to relieve spasm and sent her to a specialist in female disorders. He found her very nervous and apprehensive with "gross tremor" and some evidence of lumbosacral strain. She had a numbness which according to him implied a strong mental element in her condition. He testified that she was not deliberately falsifying or exaggerating her complaints and was helpful and cooperative during his examination. He fur-

ther testified that the shock such as she received at the accident could bring about some of the things of which she was complaining.

Dr. Walter G. Haynes, a neurosurgeon, examined plaintiff at the request of Dr. Somerset a few days before the trial. He found her to be suffering pain in the lumbosacral region and some limitation of motion and muscle spasm. There was numbness of entire right leg. The x-rays revealed mild arthritic condition which was probably not caused by the traumatic injury. According to him there was no evidence of ruptured intervertebral disk and he did not believe an operation was indicated at the time. However, he would not predict whether or not she might require surgery later if more conservative treatment failed to give relief. He testified that the leg numbness was of a type impossible to have from purely organic physical causes and was due to hysterical reaction, a nervous ailment which was a result of a subconscious guarding of the body, not controlled by voluntary thought. He considered that such a condition could follow shock and was seen frequently following nervous or mental shock. In his opinion her condition could be relieved by psychiatric treatment. He did not consider her complaints out of proportion to his findings. He testified that she was not malingering or overemphasizing her difficulties and he found her a cooperative patient. He attached no significance to the statement allegedly claimed to have been made by her immediately after the collision to the effect that she was not hurt.

Dr. Benjamin F. Morton, a specialist in psychiatry and neurology, examined plaintiff the week of the trial at the request of Dr. Haynes. His examination revealed hysterical or emotional reaction as the cause of the numbness in her entire right leg. In his opinion her case was one of post traumatic psychoneurosis, a group of emotional symptoms of which the numbness was one, along with backache, sleeplessness, loss of appetite, etc., caused by an accident, but not organic injury to any nerve. In his opinion she was not deliberately complaining and was in need of psychiatric treatment. In his opinion the collision would probably cause the condition he found.

 Upon a careful consideration we feel that the matter of plaintiff's injuries was fairly and properly submitted to the jury and there is nothing in the record to indicate that the verdict was the result of passion or prejudice or other improper motive. The trial judge upon consideration of the motion for a new trial based upon excessiveness of the verdict overruled the motion. This adds to the presumption of correctness of the finding of the jury. Under all the circumstances we are not willing to say that the verdict is excessive and so it will not be disturbed. Wilson & Co., Inc., v. King, 250 Ala. 90, 33 So.2d 351; W. T. Smith Lumber Co. v. McKenzie, 256 Ala. 496, 55 So.2d 919.

Affirmed.

FOSTER, LAWSON, and SIMPSON, JJ., concur.