80 So.2d 643

**C. L. ACTON**

v.

**Grace BROWNE et al.**

**6 Div. 677.**

Supreme Court of Alabama.

May 26, 1955.

Johnson & Randall, Oneonta, for appellant.

Spain, Gillon & Young, Jos. G. Gamble, Jr., Birmingham, for appellees.

618

**MAYFIELD, Justice.**

This is an appeal from a judgment of the Circuit Court of Blount County, Alabama. The plaintiff-appellant brought an action against the defendants-appellees for damages suffered in an automobile collision.

The plaintiff's complaint, as amended, was in six counts. The first two counts were withdrawn prior to trial. Count 3 charged both appellees with simple negligence. Count 4 charged that willful or wanton injury was inflicted on the appellant by both appellees. Count 5 charged simple negligence by Grace Browne while acting within the line and scope of her authority as agent, servant or employee of Frank Browne. Count 6 charged that willful or wanton injury was inflicted on the appellant by Grace Browne while acting within the line and scope of her authority as a servant, agent or employee of Frank Browne.

The defendants-appellees pleaded the general issue in short with leave to give in evidence any matter which, if well-pleaded, would be a defense to the cause of action. At the request of the defendants, the trial court gave the general affirmative charge as to counts 4 and 6. On the remaining counts the jury returned a verdict for the defendants. The plaintiff's motion for a new trial was overruled by the trial court.

The collision, which was the basis of this suit, occurred on Highway 31 near its intersection with the Oaky Hollow Road, approximately a half mile south of Blount Springs, Alabama. The collision took place near 7:00 o'clock in the morning on 7 August 1952, at which time a drizzling rain was falling. Plaintiff's truck and defendants' automobile were both traveling north on U. S. Highway 31 at the moment of impact. The defendants' automobile overtook the plaintiff's truck, which had turned onto the main highway from the Oaky Hollow Road, and crashed into the rear of the truck. From the intersection of the road and highway, looking southward, visibility is only limited by a hill, the crest of which is some six or seven hundred feet from the intersection. Between the crest of the hill and the intersection is a bridge which was approximately 175 or 200 feet south of the intersection. From the crest of the hill northward the highway is straight for a mile and there is nothing to obstruct the view for that distance.

For approximately 900 feet north of the intersection, the highway is paralleled by an old road or detour road running along the eastern edge of the highway. The evidence indicates that the old detour road and the highway are separated only by a narrow shoulder of mud or dirt and some loose gravel. The surface of the main highway is not more than an inch higher than that of the detour road. The width of the highway is 25 feet and that of the detour road 13 feet.

There is a stop sign at the point where the Oaky Hollow Road runs into U. S. High-

way 31. The distance of the highway from the stop sign is a matter of some dispute. Some of the testimony fixes the difference at 15 feet, and other testimony tends to place it 40 feet or more from the intersection. The Oaky Hollow Road intersects the highway from the west and is on an upgrade of about 7 degrees.

At the time of the collision, the appellant was driving his 1948 model G.M.C. truck. The appellees' automobile, a new 1952 Hudson which had been driven less than a thousand miles, was owned by Frank Browne and was being driven for him by Grace Browne. Some moments prior to the collision, the appellant had driven his truck down the Oaky Hollow Road and onto the highway. After the appellant had traveled approximately 116 feet from the center of the intersection, northward on the main highway, and had reached a speed of approximately 20 miles per hour, the back railing of the truck was struck with considerable force from the rear by the front end of the appellees' automobile. As she approached the plaintiff's truck, Mrs. Browne pulled her car to the right so that the right wheels went off of the highway. She then applied her brakes and her automobile skidded straight ahead and then back onto the highway and crashed into the rear of the appellant's truck. Skid marks 56 feet in length were left by the Browne car beyond the right edge of the highway.

According to the appellant's testimony, he brought his truck to a complete stop when he was even with the stop sign. He looked in both directions, saw no approaching traffic, and turned into the main highway. The appellant started his truck in second gear and while making the turn into the highway was going approximately 5 miles per hour. When appellant reached the center of U. S. Highway 31, he saw appellees' automobile for the first time at a distance of 700 feet south of the intersection. Appellant testified that in his judgment, the appellees were overtaking his truck at a rate of speed between 80 and 85 miles per hour.

The physical facts of the case have some tendency to support appellant's judgment that the appellee was driving at an excessive rate of speed.

The appellant's testimony was contradicted by the occupants of the Browne car who testified that Mrs. Browne was not going over 50 miles per hour and that the Acton truck did not stop before it entered the highway. They further claim that the Browne's car was less than 100 to 200 feet from the intersection when the Acton truck turned onto the highway. On these matters the testimony was irreconcilably in conflict and presented a jury question.

The occupants of the appellees' automobile were not in agreement concerning the distance from defendant's truck of oncoming traffic at the time of the collision. One of the passengers in the rear seat testified that there were one or two trucks, two or three hundred feet away. The other passenger saw no approaching traffic. Frank Browne, who was sitting on the right front seat, stated that some traffic passed a couple or three minutes after the collision. Mrs. Grace Browne, the driver, testified that there was oncoming traffic "a good distance away" which passed within "seconds—maybe half a minute, after the collision." This testimony is, of course, highly relevant on the question of why Mrs. Browne did not pass the Acton truck on the left side.

According to the testimony of some of the occupants of the Browne automobile, they saw the appellant's truck when it was 150 to 175 feet from the intersection and proceeding into the highway. One of the occupants of the rear seat called attention to Acton's approach and expressed the hope that he would stop. At this time, according to the testimony of witnesses for the appellees, the Browne car was on the bridge, or about half-way down the hill, some three to five hundred feet from the point of the collision. The testimony relates that this remark was heard by Mrs. Browne who, up to that time, had not seen the Acton truck. Mrs. Browne's testimony was to the

effect that when she first saw the appellant's truck it was between the stop sign and the highway, and at that time she took her foot off of the gas. That after she had cleared the bridge she pulled her car to the right until the right wheels were on the shoulder and then applied her brakes. She thinks that her "brakes took hold too hard."

Testimony concerning the injuries suffered by the appellant and the damage to the truck was also given in evidence.

 Appellant's sole assignments of error are directed to written charges given by the court upon the request of the defendant. In his brief in this court, the appellant presents argument which concerns only three of these charges. Our consideration is therefore limited to these charges. Appellant's first contention is that the court erred in granting the defendant's request for the general affirmative charge as to count 6. In considering the propriety of the court's action in this particular, we must accept as true that evidence which was adduced favorably to the plaintiff. Purity Ice Co. v. Triplett, 257 Ala. 116, 57 So.2d 540; Alabama Power Co. v. Buck, 250 Ala. 618, 35 So.2d 355. If we consider the testimony in the light most favorable to the plaintiff, the tendencies of the evidence show that at the time of the collision, the automobile of Frank Browne, who was riding in his car, which was being driven for him by his wife Grace Browne, was coming over the crest of a hill at a rate of speed between 80 to 85 miles per hour at a time when the visibility was limited by a drizzling rainfall. That at the time the Acton truck pulled onto the highway, the appellees' car was at least 600 to 700 feet from the intersection. And at the time Mrs. Browne's attention was called to Acton's truck's approach to the highway, that she did not immediately apply her brakes. Further, that the roadway was clear on both sides of appellant's truck and that she pulled to the right until her wheels were off the main highway and applied her brakes so that her automobile skidded 56 feet back onto the highway and struck the

rear of appellant's truck with much force, which was then proceeding forward at a rate of 20 miles per hour, at a point 116 feet north of the intersection.

This court has previously held:

" 'Wantonness may arise from knowledge that persons, though not seen, are likely to be in a position of danger, and with conscious disregard of known conditions of danger and in violation of law brings on the disaster. Wantonness may, of course, arise after discovery of actual peril by conscious failure to use preventive means at hand. * * * ' " Alabama Power Co. v. Buck, 250 Ala. 618, 622, 35 So. 2d 355, 358; Godfrey v. Vinson, 215 Ala. 166, 110 So. 13.

Appellees' insistence is that it would be unreasonable to believe the appellant's version of the collision. We express no opinion in this regard other than to point out that such an issue was in the exclusive province of the jury.

 Appellees' contention questioning the constitutionality of Code 1940, Tit. 7, § 138(1), touches only the correctness of the trial court's ruling on demurrer. This vital issue, which is of so much interest to the bench and bar of this state, is not presented by this appeal, and we will not consider it collaterally. Federal Automobile Ins. Ass'n. v. Meyers, 218 Ala. 520, 119 So. 230; Sibley v. Odum, 257 Ala. 292, 58 So.2d 896.

 We are clear to the conclusion the evidence adduced in behalf of the plaintiff and the reasonable inferences that could be drawn therefrom were sufficient to take the question of wantonness to the jury. The court below, therefore, erred in granting the defendants' request for the affirmative charge as to count 6 in withdrawing it from the jury.

 The learned judge's oral charge to the jury furnished correct instructions concerning negligence, contributory negligence, and subsequent negligence. The court, at the request of the defendant, further gave

written charge number 9, which was as follows:

"The court charges the Jury that, if you are reasonably satisfied from the evidence that the plaintiff was guilty of negligence which proximately contributed even in the slightest degree to his injury, you cannot find for the plaintiff."

Appellant urges that this is the "sole proximate cause charge" and that it constitutes error where there is evidence of subsequent negligence or wantonness. The appellant relies on Boyette v. Bradley, 211 Ala. 370, 100 So. 647. The significant word "sole", however, was not included in the charge now considered and is distinguishable from that in this case. We consider the instant case within the rule stated in Birmingham Electric Co. v. Carver, 255 Ala. 471, 52 So.2d 200, and Salter v. Carlisle, 206 Ala. 163, 90 So. 283. We conclude that the giving of charge 9 did not constitute reversable error, and if appellant considered a clarifying charge appropriate, he should have requested such further explanation.

The final point for our consideration concerns appellees' requested charge number 25, given by the court as follows:

"Gentlemen of the Jury, I charge you that it is the duty of a driver entering a main or trunk highway from an intersection road to come to a full and complete stop *as near the right of way line as possible* before driving on to such highway, and, regardless of direction to give the right of way to vehicle driving on such highway." [Emphasis supplied.]

Code 1940, Tit. 36, § 19(c), as amended, provides:

"The driver of a vehicle shall stop as required by this chapter at the entrance to a through highway and shall yield the right of way to other vehicles which have entered the intersection from said through highway or which are approaching so closely on said through highway as to constitute an immediate hazard, but said driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection on said through highway shall yield the right of way to the vehicle so proceeding into or across the through highway."

Subsection (d) of § 19, as amended, supra, provides:

"The driver of a vehicle shall likewise stop in obedience to a stop sign as required herein at an intersection where a stop sign is erected at one or more entrances thereto although not a part of a through highway and shall proceed cautiously, yielding to vehicles not so obliged to stop which are within the intersection or approaching so closely as to constitute an immediate hazard, but may then proceed."

Code 1940, Tit. 36, § 21, provides as follows:

"The highway department with reference to the state highways and local authorities with reference to highways under their jurisdictions are hereby authorized to designate main traveled or through highways by erecting at the entrances thereto from intersecting highways, signs notifying drivers of vehicles to come to a full stop before entering or crossing such designated highways, and whenever any such signs have been so erected it shall be unlawful for the driver of any vehicle to fail to stop in obedience thereto. * * *"

This court has held that the proper and authoritative placement of stop signs is presumed. Harris v. Blythe, 222 Ala. 48, 130 So. 548; Mobile City Lines v. Orr, 253 Ala. 528, 45 So.2d 766.

Nowhere do we find the emphasized requirement which was included in the defendants' given charge number 25. We are of the opinion that this charge misstates the law and was misleading to the jury. In overruling the appellant's motion for a new trial, the trial court held that if the defendants' given written charge

number 25 was error, it was error without injury in view of the oral charge of the court and the evidence as a whole. We must, therefore, examine this disputed charge in the light of the surrounding circumstances to determine whether or not the erroneous charge injuriously affected the appellant's substantial rights, and whether or not this injury was cured by the court's oral charge.

The evidence is in dispute as to the distance of the stop sign from Highway 31. Testimony of the appellant places it at about 15 feet from the intersection, while other testimony fixes the distance at around 40 feet. It is further disputed as to whether the appellant stopped his truck at the stop sign. Acton testified that he complied with the law in this particular; the occupants of appellees' car testified that he did not so stop. The record is barren of any evidence whatsoever that Acton stopped his truck at any point other than the stop sign.

The only portion of the court's oral charge which specifically touched on appellant's duty to stop before entering the highway was a reading from Title 36, § 21, supra. In addition, four of the defendants' written charges, given by the court, stated in effect that the law requires a person to come to a complete stop before entering the highway against or adjacent to which had been erected a stop sign, and that a failure to do so is negligence as a matter of law. Further, if the plaintiff failed to stop before entering the highway, he would be guilty of contributory negligence as a matter of law, and if such was the proximate cause of, or contributed materially to, his injury he could not recover. And further, that the defendants had a right to assume that the plaintiff would obey the law of the road, and that it was his duty in driving on a road intersecting a highway to obey the stop sign.

 Contrary to defendants' written charge number 25, the law imposes no duty on a driver to stop at a point as near as possible to the right-of-way line. There is no evidence that the plaintiff did stop

at such a specific point. Considered in the light of the evidence and in connection with the complete oral charge given the jury, we conclude that it was probable that the jury was led to believe that if appellant failed to stop as near the right-of-way line as possible, such failure, in and of itself, constituted negligence. This would be true even though the jury may have been reasonably satisfied that the appellant did stop at a point even with the stop sign. It is our view that the erroneous written charge given in behalf of the defendants was not without injury, and for this and the other error indicated, the judgment of the Circuit Court must be, and is hereby, reversed and the cause remanded.

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON and GOODWYN, JJ., concur.

