275 So.2d 671

Cynthia A. LAND, a minor, and Anthony H. Land, a minor suing by Martha V. Land, their Mother

v.

SHAFFER TRUCKING, INC., a corp.

SC 96.

Supreme Court of Alabama.

March 29, 1973.

Traylor, Baker & Cole, Fort Payne, Jones & Landrum, Birmingham, for appellant.

Dunn, Porterfield, McDowell & Scholl, Birmingham, for appellee.

**FAULKNER, Justice.**

This is an appeal from the Circuit Court of Jefferson County from an order of the trial court denying plaintiffs-appellants' motion for a new trial.

The appellants are the minor children of Arthell H. Land, deceased. They brought suit below by their mother, Martha V. Land, to recover damages for the wrongful death of their father. They alleged that their father was killed when he was run over by a truck operated by defendant's agent, servant, or employee while acting within the line and scope of his employment. The case was tried before a jury upon defendant-appellee's plea in short by consent. At the end of testimony and summation by counsel, and upon request by defendant, the trial court gave the general affirmative charge for the defendant. Plaintiffs' motion for new trial, containing five grounds, was overruled by the trial court. Three of the grounds in the motion for new trial involve alleged error by the trial court in granting the general affirmative charge for the defendant. Two of the grounds allege that the jury verdict returned for the defendant was contrary to the evidence.

The rule in this state is that in civil cases the question must go to the jury if the evidence or reasonable inferences therefrom furnish a mere gleam, glimmer, spark, the least bit, the smallest trace, a scintilla in support of the theory of the complaint. Lankford v. Mong, 283 Ala. 24, 214 So.2d 301 (1968). It is equally well settled by this court that in determining the propriety of giving a general affirmative charge upon the request of the defendant, the evidence most favorable to the plaintiff must be accepted as true. Purity Ice Co., Inc. v. Triplett, 257 Ala. 116, 57 So.2d 540 (1952). Under these well established rules of law, did the trial court err in granting the defendant's request for the general affirmative charge? The evidence before the court is summarized. Land Truck Lines, Inc. of Albertville, Alabama, by its president, Arthell H. Land, the decedent in this case, entered into an agreement with Marvin L. Gatlin whereby Gatlin, with a tractor owned by him, would pull trailers owned by Land Truck Lines, Inc. The agreement provided for sharing the revenue received from the operation between the corporation and Gatlin. This business venture began in July, 1968. There appears to have been no official termination of it. However, Arthell Land was killed on January 3, 1969, when he was run over by a tractor-trailer rig being operated by Gatlin in Jasper, Alabama.

Some weeks before the accident which is the basis of this suit, Land Truck Lines sent Gatlin to Monroe, Louisiana to get a

trailer owned by Land Truck Lines. When Gatlin gained possession of the trailer in Louisiana, he failed to return it to its rightful owner. Instead, Gatlin engaged in a bit of "free enterprise" of his own by pulling the trailer with his tractor. Gatlin traveled to various places over the United States, hauling loads of cargo with Land Truck Lines' trailer. He did not share the revenue collected therefrom with Land. It appears from the evidence that Land did not know where Gatlin or his trailer were for a period of three weeks prior to the death of Land. During a part of this three weeks period Gatlin was in New York. Rather than travel back south with an empty trailer, Gatlin made inquiry of shippers and discovered that Shaffer Trucking, Inc., whose home office is in New Kingstown, Pennsylvania, could arrange a shipment. Gatlin drove to Pennsylvania from New York and entered into a lease of the rig with Shaffer (called a trip lease) to transport cargo from Inwood, West Virginia to two consignees in Meridian, Mississippi. The trip lease showed Land Truck Lines as the owner of the motor vehicle, with Gatlin as the driver. Land had no knowledge of this trip lease. Gatlin was to receive all the revenue from the trip. The temporary cardboard signs on the sides of the tractor showed the name "Shaffer Trucking, Inc."

After loading the cargo in West Virginia, Gatlin drove to Meridian, Mississippi, and unloaded the cargo consigned to the first consignee. At that time he was approached by three men who were regularly employed in the business of repossessing trailers. They demanded possession of the trailer. Gatlin refused to give up possession, and not being detained further by the three men, drove to a "truck stop" in Meridian, Mississippi, followed by them. (He still had in the trailer the cargo consigned to the second consignee in Meridian.) From there he called his lawyer in Alabama for advice. The lawyer advised Gatlin to get back to Alabama as fast as he could.

Without delivering the remaining cargo to the second consignee, and without any interference from the three repossessors, Gatlin left Meridian and headed for his home in Alabama. He was still followed by the repossessors. Gatlin drove north toward Tuscaloosa, Alabama. Just inside the Alabama state line he stopped again at a "truck stop" and drank coffee. He was joined in this social event by the three repossessors. There was no interference by them at this time with Gatlin's direction of travel.

Gatlin, upon leaving this "truck stop" again proceeded north with the tractor and trailer and the undelivered Meridian cargo, toward his home in or near Arab, Alabama. He did not stop until he was apprehended by a State Trooper and given a traffic citation in Jasper, Alabama. The trailing repossessors stopped at the scene of the confrontation between law enforcer and law violator. While at the scene, Gatlin's son, age 19 years, who had gone to Meridian with his father to assist him in unloading the cargo, got into an altercation with the three repossessors and was escorted to the Jasper jail by an officer. Being unsuccessful in obtaining the release of his son from the Jasper jail by pleading with officials in the courthouse located across the street from the jail, Gatlin left and walked toward his tractor-trailer rig, which he had moved and parked in front of the Jasper jailhouse. He was going to his home. His words were, "I was ready to leave the jail and go home." The decedent, Land, now appeared and demanded possession of his trailer. Land said to Gatlin, "Ole buddy, I believe you have pulled that one your last mile."

Gatlin refused to give it up and entered the driver's side of the tractor. Land followed by entering the cab from the passenger's side. Gatlin started the motor and began forward movement of the rig. Land then removed the ignition key of the tractor. Whereupon, Gatlin drew a gun on Land and recovered possession of the key. Gatlin said, "I have got a lot of road to

cover, get your damn hands off my truck." Land retreated from the cab to the street. The rig moved forward. Land was crushed to death under the rear wheels of the trailer. There were no witnesses as to how Land stepped, fell, or slipped under the moving trailer. Gatlin was then placed in the Jasper jail. He was permitted to call Shaffer to give it information as to the location of the cargo. Shaffer made arrangements with another carrier to transport the cargo to the second consignee in Meridian, Mississippi.

Each case must be governed by its own peculiar facts, and from the evidence here this court is of the opinion that Gatlin was the agent, servant, or employee of Shaffer; that Gatlin was outside the scope of his employment at the time of the accident; that Gatlin abandoned his employment when he left Meridian, Mississippi, and returned to Alabama for personal reasons. Where the servant abandons his master's business for personal reasons, the employment is suspended, and the master is not liable for the negligence of the servant during the suspended employment, and during the time of the servant's departure from the master's business. Engel et al. v. Davis, 256 Ala. 661, 57 So.2d 76 (1952). Here the deviation by Gatlin from the scope of his employment was very marked and unusual. He was proceeding in the opposite direction from the consignees in Meridian and was over 100 miles north of them when the accident occurred. As said in *Engel,* supra, while citing Ritchie v. Waller, 63 Conn. 155, 28 A. 29, 27 L.R.A. 161, 38 Am.St.Rep. 361, with approval,

" 'In cases where the deviation is slight and not unusual, the court may, and often will, as a matter of law, determine that the servant was still executing his master's business. So, too, where the deviation is very marked and unusual, the court in like manner may determine that the servant was not on the master's business at all, but on his own. Cases falling between these extremes will be regarded as involving merely a question of fact, to be left to the jury or other trier of such questions.' \* \* \* "

The direction in which the employee is travelling in relation to his business destination, may, and often is, a significant factor in determining whether he is within the scope of his employment. It was stated in Stovall v. Jepsen, 195 Miss. 115, 13 So.2d 229 (1943) that the inference that the driver was not acting within the scope of his employment may be justified or required, where the evidence discloses that at the time of the accident, he was travelling away from his destination. In our state the Court of Appeals held that the evidence required a finding that the driver was outside the scope of his employment where he was directed to drive to a certain town and return, but continued on beyond that town for a distance of 20 miles when the accident occurred. Jackson v. DeBardelaben, 22 Ala.App. 615, 118 So. 504 (1928).

The statement by Gatlin to Land, "I have got a lot of road to cover, get your damn hands off my truck" may lend itself to speculation that Gatlin intended to return to Meridian to deliver the remaining cargo. (However, just previous thereto, he said he was going home.) This is not sufficient to bring him within the scope of his employment.

This court has held that when a servant has abandoned his employment by the master, the mere fact that he is returning thereto does not of itself reinstate the servant in the master's employment and establish the engaging in the master's business so as to subject the master to liability and for damages resulting after the abandonment and before return is an accomplished fact. Bell v. Martin, 241 Ala. 182, 1 So.2d 906 (1941); Mobile Pure Milk Co. v. Coleman, 230 Ala. 432, 161 So. 829 (1935).

Finally, there is absolutely no evidence as to how Land was run over by the rig driven by Gatlin. Gatlin testified that the

last time he saw Land, Land was standing on the curb behind the moving tractor.

We have reviewed the entire record and hold that there was not sufficient evidence to submit the case to the jury and that the trial court was correct in giving the general affirmative charge for the defendant.

Affirmed.

HEFLIN, C. J., and MERRILL, HARWOOD and MADDOX, JJ., concur.